JOHN S. LEWIS *vs.* WILLIAM I. LEWIS ET AL.

First Judicial District, Hartford, January Term, 1904.
TORRANCE, C. J., BALDWIN, HAMERSLEY, HALL and PRENTICE, JS.

The weight and credibility of evidence is a matter for the determination of the trier, and therefore the testimony of a witness or witnesses, although not directly contradicted, may nevertheless be discredited by circumstances in evidence.

Certain claims of error in the present case reviewed and *held* to rest upon mistaken assumptions respecting the finding of the trial court.

The possession of a life tenant is not adverse to the remainderman or reversioner.

The assignee of the reversion in an estate granted to a life tenant upon express condition, cannot avail himself of breaches of the condition which occurred prior to his acquisition of title.

Until a life tenant's right of possession matures he cannot be chargeable with laches in not asserting it.

To estop a plaintiff in ejectment upon the ground of his silence while the defendants were making improvements upon the property and selling portions of it as their own, it must at least appear that he either knew or was bound to know of them.

Section 4052 of the General Statutes provides that final judgment in ejectment shall not be rendered against a defendant who has in good faith made improvements upon the property, believing his title to be absolute, until the court shall have ascertained the present value of such improvements and the amount due the plaintiff for use and occupation ; and if the value of the improvements exceeds the amount due for use and occupation, execution shall not issue until the excess has been paid by the plaintiff to the defendant, or into court for his benefit ; but if the plaintiff shall elect to have the title confirmed in the defendant, and shall file notice thereof, the court shall ascertain what sum ought in equity to be

Lewis *v.* Lewis.

paid to the plaintiff, and upon its payment may confirm the title in the defendant. *Held :*—

1. That the statute gave the court no authority to force an unwilling defendant to purchase the plaintiff's title, and therefore the trial court erred in rendering a judgment against the defendants for the ascertained value of such title. It is questionable whether the legislature could constitutionally enact a statute conferring such power.

2. That whether the provisions of the statute are applicable to any case in which the plaintiff is not the owner of the fee, they certainly do not apply, and could not have been intended to apply, to a case in which the plaintiff's interest is only a life estate defeasible upon conditions subsequent, which may or may not occur at any time, and which limit the plaintiff's beneficial enjoyment in the premises and diminish the value to him, of the defendants' improvements, the extent of such diminution being in any event substantial, and susceptible of being still further restricted by judicial construction of the language imposing the conditions.

3. That the conditions of forfeiture imposed upon the life tenant, provided he alienated the premises or failed to live upon them during his life, were not against public policy.

4. That the plaintiff was entitled to recover as damages the fair rental value of the unimproved property during the time he was unlawfully dispossessed, subject to any proper deductions ; but that such rental value was not to be reduced by reason of the limitations imposed upon the plaintiff in the use of the premises.

A waiver of the right to take advantage of existing breaches of conditions is not a waiver of the conditions themselves.

Argued January 5th and March 1st,—decided April 15th, 1904.

ACTION in the nature of ejectment, brought to and tried by the Superior Court in Middlesex County, *Ralph Wheeler, J. ;* facts found and judgment rendered that the plaintiff, by operation of § 4052 of the General Statutes, recover of the several defendants certain sums, and that upon the payment thereof to the plaintiff the title to the land claimed by each respectively be confirmed in him, from which all the parties appealed. *Error, judgment set aside and cause remanded.*

This is the same case as that reported in 74 Conn. 630. The substantial allegations of the complaint are there recited. The judgment then reviewed, being one upon demurrer to the complaint sustained, having been set aside and the cause remanded, the defendants answered. The

answers contained sundry admissions and denials, and set
up that the conditions contained in the deed of August 28th,
1867, which are also recited in the report of the former case
and which were then held to be conditions subsequent, had
been broken, that re-entry had been made by the grantor and
possession thereafter acquired by him, which possession con-
tinued in him until his death when it passed to the defend-
ant William I. Lewis, his devisee, who, together with his
grantees, his co-defendants, have since remained in such
possession. They also alleged matters of estoppel arising
from delay in the assertion of the plaintiff's rights. The
reply denied the allegations of breach of condition, re-entry,
re-possession and estoppel. The case was heard by the court
and the issues found for the plaintiff, and it was found that
the plaintiff was entitled to the possession of the premises
in question for the term of his life.

The court found true the allegations of the complaint with
respect to the original ownership of the premises in question
by John Lewis, his conveyance thereof by deed of Au-
gust 28th, 1867 (herein known as Exhibit A), Henry C.
Lewis' entry into possession under said deed, the latter's
support of John Lewis in accordance with the terms of the
deed until October 1st, 1870, and John Lewis' departure
from the premises on that day never to return. The plain-
tiff was then four years of age and lived with his father
upon the premises. The events which succeeded are found
as follows: When John Lewis left the premises he removed
to New York City, where he became sick and was visited
by his nephew, William I. Lewis, one of the defendants, and
he subsequently went to Washington, D. C., where he lived
until the time of his death, October 2d, 1871, with the said
William I. Lewis. After making his home with William
I. Lewis and being cared for by him, John Lewis became
desirous that he should have the property in question, and
formed the intention of giving and conveying it to him.
With that intention he executed and delivered to him a deed
thereof, dated March 10th, 1871, herein called Exhibit B.
William I. Lewis was fully informed of the purpose of John

Lewis and accepted said deed. Thereafter John Lewis, in all his acts in reference to this property, was moved by the fixed purpose of perfecting the title in William I. Lewis, and of making the transfer certain and effectual. At the time when Exhibit B was delivered, John Lewis represented to William I. Lewis that Henry C. Lewis had not performed and was not performing the conditions set forth in Exhibit A, and that he, the said John Lewis, was by reason thereof entitled to repossess himself of said premises and to enjoy his former estate therein, and William I. Lewis was fully informed by John Lewis of the facts as claimed by him, John Lewis, and was advised by him to go and demand possession of the premises. Shortly thereafter William I. Lewis visited Westbrook, and, with said deed in his possession and claiming by authority thereof, went upon the premises and demanded of Henry C. Lewis that he relinquish possession of said premises to him, the said William I. Lewis, but Henry C. Lewis refused to surrender possession.

William I. Lewis thereafter returned to Washington, and on May 27th, 1871, Exhibit B was filed for record in the office of the town clerk of the town of Westbrook.

On June 16th, 1871, John Lewis executed and delivered to William I. Lewis a power of attorney to attend to all business of the former " within the State of Connecticut of whatever kind or description that is now necessary to attend to or that may become necessary during the time the said Wm. I. Lewis may remain in said State," and on or about said day delivered to William I. Lewis United States bonds, aggregating in value about $5,000, telling him to go and get possession of said premises, and further advising him as to an offer to be made to Henry C. Lewis. William I. Lewis went to Westbrook and upon the premises, and by the authority of said power of attorney, began negotiations with Henry C. Lewis. Henry C. Lewis proposed to relinquish possession of the property for the sum of $8,000 to be paid him. William I. Lewis offered to give $2,000. It was thereupon agreed to leave to one Stannard the determination of the question of what sum should be

paid Henry C. Lewis. Stannard having decided that the sum of $4,000 should be paid him, a release deed dated July 10th, 1871, was then executed by Henry C. Lewis to William I. Lewis, and left by the former with Stannard for delivery by him to William I. Lewis when the consideration should be paid. The bonds of John Lewis, which had been brought from Washington by William I. Lewis, were, on said July 10th, 1871, left by him at a bank in Clinton for sale through a broker in New York. The proceeds of such sale were deposited in said bank in the name of William I. Lewis, and drawn upon by him in payment of Henry C. Lewis, checks therefor signed by him being left with Stannard for use when Henry C. Lewis should leave the premises. Henry C. Lewis thereafter relinquished possession of the premises. The money was paid him, the deed delivered to William I. Lewis in accordance with the understanding, and on July 28th, 1871, the same was left for record in the office of the town clerk. Upon leaving the premises Henry C. Lewis took with him the plaintiff.

On or about May 1st, 1872, William I. Lewis and Isadora I. Lewis, his wife, removed from Washington and occupied said premises, and have since remained in occupation thereof, excepting such portions as have been conveyed to the other parties.

William I. Lewis in 1878 conveyed said premises through a third party to his wife, Isadora. The defendants Winship, Hall, and Yale, claim to own portions of the premises under deeds from William I. Lewis and wife.

Henry C. Lewis died April 13th, 1898. John Lewis left a will devising all his real estate in Middlesex county in this State to William I. Lewis.

Subsequent to July 10th, 1871, Henry C. Lewis did not at any time during his lifetime possess any portion of said premises ; neither has the plaintiff since the death of Henry C. Lewis ; but the defendant William I. Lewis and the grantees under him have at all times been in possession.

When William I. Lewis accepted the deed of July 10th, 1871, he intended to, and did in fact, waive and abandon all

right to claim possession of said premises on account of non-performance of any of the conditions set forth in Exhibit A, both for himself and for John Lewis, so far as John Lewis had any interest or William I. Lewis had any right to represent John Lewis.

Upon the court's determination that the plaintiff was entitled to possession, the several defendants made claims, under the provisions of § 4052 of the General Statutes, for payment to them by the plaintiff of the value of the improvements made by them upon the several portions of the original premises then owned by them respectively, which improvements were claimed to have been made in good faith and in the belief that their respective titles to the land upon which they were made were absolute. The court having first determined that improvements had been made upon the premises and made as claimed, thereupon estimated the present value of an estate for the plaintiff's life therein, based upon his expectation of life according to approved expectancy tables, and also the amount due the plaintiff from the several defendants for use and occupation. The plaintiff, pending these proceedings, filed his election to have the title confirmed in the several defendants, and the court also ascertained and determined the amounts which ought in equity to be paid the plaintiff by each occupant to entitle him to such confirmation. In this determination the court took into account the fact that the estate of the plaintiff was only a life estate, and ruled, with respect to both this inquiry and that as to the amount due for use and occupation, that the conditions attached thereto, to wit, that he was required to occupy the premises himself during his life, barred him from a more profitable use of them than for farming purposes. In arriving at the amounts which ought to be so paid by the several defendants, the court added to the sums found due for past use and occupation, upon the basis adopted as aforesaid, such further sums, and such only, as would during the plaintiff's expectation of life yield him an annual income from the several portions of the premises equivalent to the annual rental values ascertained as aforesaid. As the result of these

computations it was found that there ought, equitably, to be paid to the plaintiff, as a condition of the confirmation of the defendants' respective titles, the following sums : from Lewis and wife $2,500, from Hall and Yale $200, and from Winship $200. The judgment of the court was that the said defendants respectively pay the plaintiff said several sums, and that when payment thereof, together with interest thereon from the date of judgment, should be made, the title of the parties so paying should, on motion to the court, be confirmed in them.

In his memorandum of decision the court directed that the defendants might within one week file with the clerk statements of intention in regard to the payment of the several sums which it was found as aforesaid ought to be paid to the plaintiff. The defendants Lewis and Winship filed notices of their elections not to pay, the defendants Hall and Yale of their election and offer to pay.

All the parties appealed from the judgment. The appeal of Hall and Yale was subsequently withdrawn.

*Lewis E. Stanton* and *Frank D. Haines,* for William I. Lewis *et al.*

*Henry C. White* and *Edward L. Clark, Jr.,* with whom was *Charles E. Jennings, Jr.,* for John S. Lewis.

*Henry Stoddard* and *Hugh M. Alcorn,* for Yale *et al.*

PRENTICE, J. Two altogether distinct classes of questions are presented upon this record, to-wit : those which relate to the finding of the court that the plaintiff was entitled to have possession of the premises in controversy, and those which arose from the attempt to apply the provisions of § 4052 of the General Statutes to the situation disclosed. The appeal of Lewis and wife and Winship raises the questions of the first class.

These questions relate both to the finding of facts and the legal conclusions of the court therefrom. Various exceptions are taken to the finding, upon the grounds that facts are found without evidence, that undisputed and

proven facts are not found, and that facts are found contrary to undisputed evidence. Our examination of the record with respect to the exceptions concerning facts material to any question of law, fails to disclose any instance in which a fact has been found without evidence, or an admitted or undisputed fact not found. With objections based upon claims of "facts proved" we have no concern.

Most of these claims involve the mistaken assumption that the direct evidence of a witness or witnesses, if not distinctly contradicted, constitutes undisputed evidence. This is far from true. There may be the best of reasons for discrediting witnesses. There may be circumstances in evidence which in the opinion of the trier ought to outweigh any amount of assertions. These matters all lie within the domain of the trial court. It is the final judge of what is to be believed and what not. These observations apply with peculiar force to the finding of the court with respect to the controlling features of the case involving the intention of the parties in the delivery and acceptance of the deed of March 10th, 1871, the character of the negotiations which resulted in the giving of the deed of July 10th, 1871, the scope of the submission to arbitration, the nature of the transaction as consummated, and the waiver therein of all claims arising from a breach of condition. The considerations which led to the conclusions reached are apparent from the evidence. The finding that there had been no breach of condition prior to John Lewis' final departure from the premises is deprived of its significance in the decision of the case by the other facts found.

These defendants' remaining claims of error addressed to this branch of the case are by their counsel grouped under six heads. The first four, to the effect that John Lewis, the original grantor, re-entered for condition broken and thereby defeated the estate of both Henry C. Lewis and the plaintiff, that the submission and award was as effective as a final judgment ousting both the life tenants as a judgment in ejectment would have been, and that William I. Lewis

derived his title under the will of John Lewis and in no other way, are effectually disposed of by the finding. It is found that William I. Lewis took title by the deed of March 10th, 1871. The conclusion of law involved in this proposition is fully supported by the subordinate facts found. *Moore* v. *Giles,* 49 Conn. 570. The objection that the deed could convey no title, for the reason that the grantor was at the time ousted by the possession of Henry C. Lewis, is without foundation. The possession of a life tenant is not adverse to the remainderman or reversioner. *Merwin* v. *Morris,* 71 Conn. 555; *Schroeder* v. *Tomlinson,* 70 id. 348. The possession of Henry C. Lewis had not been converted into one adverse to John Lewis by the latter's assertion of any right for condition broken.

That John Lewis never made re-entry follows as a consequence of his conveyance of his interest on March 10th, 1871. No re-entry is claimed until subsequent to that date. William I. Lewis, who alone could thereafter make re-entry, could not avail himself of antecedent breaches of condition. Subsequent breaches of which he could take advantage do not appear. General Statutes, § 4051; *Warner* v. *Bennett,* 31 Conn. 468; *Lewis* v. *Lewis,* 74 id. 630. Waiver is furthermore expressly found.

The submission and award related only to the amount to be paid to Henry C. Lewis. Nothing else was arbitrated. All else was covered by the agreement of the parties, and that agreement was based upon a waiver of all right to claim possession for any breach of the condition of the deed of August 28th, 1867. Any claim that the agreement extended to the interest of the plaintiff, or that the negotiations and transactions which culminated in the deed of July 10th, 1871, in some way terminated that interest, has no basis in any fact found. That interest does not appear to have been involved in the negotiations, and was not in form conveyed. Had it been otherwise, Henry C. Lewis' power to bargain away or convey the estate of his infant son does not appear. Had he the power to extinguish that estate by a breach of condition, his breach in conveying and surrendering his occu-

pancy to William I. Lewis is one of which the latter cannot take advantage. *Lewis* v. *Lewis*, 74 Conn. 630.

The fifth claim of these defendants is that the payment of the $4,000 by John Lewis, under the award, estops the plaintiff from now making any claim to the premises. The answer to this claim is apparent. The submission, as we have said, did not involve any subject-matter save the amount to be paid Henry C. Lewis, and the award was of the amount to be so paid. The plaintiff's interests were in no way involved and cannot, therefore, be concluded by any compliance with the award.

The last claim consists in an appeal to the doctrine of laches and estoppel. It is said that the plaintiff is estopped from asserting his claim because he remained silent for thirty-two years after the transactions of 1871, and permitted the defendants to improve and sell portions of the property. In so far as this contention is founded upon delay in asserting title, it is to be observed that until the first life tenant's death, which did not occur until 1898, the plaintiff had no right of possession to assert. The defendants' possession as grantees of the estate of the first life tenant was a lawful possession and not adverse to the plaintiff. In so far as the claimed estoppel is based upon silence during improvements and sales, the sufficient reply made is that it does not appear that the plaintiff had knowledge of them or was under any duty to know of them.

No error, therefore, entered into the determination of the court that the plaintiff was entitled to the use and occupation of the premises for the term of his life.

The questions of the second class are raised in part by the appeal of the defendants Lewis and Winship, and in part by that of the plaintiff. The Lewises and Winship complain of that part of the judgment which requires them to pay the plaintiff the sums found to be equitable in order to entitle them to confirmations of their titles. The plaintiff complains of certain of the methods employed and principles applied in the ascertainment of said sums.

The defendants are clearly right in their contention that

the court exceeded its power in the rendition of judgment. Nowhere in the statute is authority given to the court to require a defendant in dispossess proceedings in effect to purchase and pay for the plaintiff's property or interest in property regardless of the former's objection, and no such authority can be implied. Were such authority in terms given, a serious question as to the constitutionality of such legislation would at once present itself. This question, it is to be presumed, the General Assembly would be careful to avoid, and the provisions and history of the Act show that such care has been exercised.

The question next suggests itself as to the nature of the judgment which the statute authorizes where, as here, the prevailing plaintiff has elected to have the title confirmed in the occupant and the occupant has signified his refusal to accept the title and pay the ascertained equitable equivalent. This question, suggested by our legislative attempt to deal in a brief and summary manner with a by no means simple subject, to which, in other States, more sections are devoted than there are lines in our statute, would, in a proper case for the application of the statute, involve important considerations. We have no occasion, however, to enter upon their discussion, since we are satisfied that our statute was not intended to be and is not applicable to a situation such as this case presents. The language of the statute prompts the query whether it was designed to apply to any case in which the plaintiff was not the owner of the fee. No limitation to be sure is expressed, but the sum which it is in terms provided shall be ascertained and paid by the plaintiff is the present value of the improvements, and not, under any circumstances, some share thereof appropriate to the estate which the plaintiff will acquire in them. Again, the section provides for the confirmation of the occupant's title in a certain event, apparently assuming that the claimant must have that whereby such confirmation might be made. See *Burkle* v. *Ingham*, 42 Mich. 513.

It is claimed, however, that the statute is one which is to have an equitable application, and may be moulded in the

general manner in which the trial court sought to do, so that the spirit rather than the letter shall control. If we so assume, there yet remain cases—of which the present is a good example—of such a character that it is incomprehensible that they were intended to be brought within its scope, so inapt are its provisions, so inadequate are they to the accomplishment of equity, and so impossible are they of any intelligent application.

The plaintiff has only a life estate. The deed which created it made it one upon conditions. *Lewis* v. *Lewis*, 74 Conn. 630. These conditions in terms limit the plaintiff's enjoyment of the premises, in that they forbid him selling or in any way conveying to others any part thereof, and require him to live on and occupy them during his life. These limitations, furthermore, if they continue to be effectual, are such as would have an important bearing upon the beneficial value to the plaintiff of the improvements in question. What their consequence would be in this regard would depend upon the interpretation and effect which is to be given to the language immediately preceding the *habendum*. Interpreted in one way it would seem to reduce that value to small, if not invisible, proportions. We have no occasion to make this interpretation. It is enough to indicate, as we have, the uncertainties attending the situation, and to note that in any contingency the plaintiff cannot have the full beneficial use of the improvements even during the continuance of his estate.

The plaintiff, however, claims that these limitations, whatever their extent, are no longer operative, (1) because the condition as to occupancy was on July 10th, 1871, waived by William I. Lewis, under whom all the present owners hold, and (2) because all the conditions are void as being against public policy. The waiver, which is expressly found, is one of a right to take advantage of existing breaches of condition, and not of the conditions themselves. The transaction of that date was the buying in by the owner of the reversion of an outstanding life estate. · There can be no fair legal implication therefrom, or from any incident thereof as found,

of a waiver of any condition attaching to a succeeding independent life estate not the subject of the negotiations or conveyance which resulted.

With respect to the second claim, it is to be observed that the provisions in question created conditions through which the estate which vested might be defeated, and not restrictions. In the former action all the parties concurred in that construction, which we then adopted as being in consonance with the apparent intent of the parties gathered from the whole instrument, although it was not expressed in any of the more customary formulas or in the clearest manner. A condition of forfeiture upon alienation is one which may be validly annexed to a life estate. Gray on Restraint on Alienation, § 72, and cases there cited. The condition as to occupancy is not one either impossible, unlawful, or incompatible with the estate to which it is annexed, and we discover no reason to hold it void.

We have, therefore, a situation in which the claimant has only a life estate and the occupants are the owners of the reversion. The plaintiff's estate discloses the following incidents: (1) It is a life estate only, and therefore terminable in favor of the defendants at any moment by his death. (2) It is an estate to which are annexed conditions by virtue of which it may be divested at any time within the plaintiff's life, which time cannot be approximated or estimated upon any law of average. (3) It is an estate the conditions of which limit the plaintiff's beneficial enjoyment of the premises. (4) It is an estate the conditions of which would render certain of the improvements of little or no beneficial value to the plaintiff, and all of them of a restricted value dependent in extent upon judicial construction as to the interpretation to be placed upon the language imposing the conditions. It is inconceivable that the General Assembly intended to make our statute applicable to such a situation, and by no means easy to discover how it could be judicially moulded so as to admit of an equitable application to such uncertain conditions, and what standards should be employed in the attempt. It is quite certain that if any such scope

was intended to be given to the statute more apt language would have been used; more careful provisions made, and less left to judicial conjecture and construction.

In view of the conclusion which we have reached as to the inapplicability of the statute, the plaintiff's reasons of appeal do not call for a further consideration than has already been incidently given them, except to observe that in the assessment of damages, which the complaint calls for, the plaintiff is entitled to be allowed the fair rental value of the unimproved property for and during the time he was unlawfully dispossessed, subject of course to any proper deductions. The defendants can claim no reduction from this rental value by reason of any limitations imposed upon the use of the premises while in the plaintiff's possession. The court below seems not to have observed this rule in ascertaining the amount due for past rents and profits. In this there was error.

There is error, and the judgment is set aside and the cause remanded to be proceeded with according to law.

In this opinion the other judges concurred.