JOSEPH F. CALLANAN *vs.* MARVIN CHAPIN & others.

Hampden.    September 27, 1892. — January 11, 1893.

Present: FIELD, C. J., KNOWLTON, MORTON, LATHROP, & BARKER, JJ.

*Agreement to sell Real Estate — Specific Performance — Statute of Frauds — Delivery.*

A bill in equity alleged that B., the defendant, by a written agreement under seal, duly authorized by him and for a valuable consideration, agreed to execute on a certain date a bond for a deed of land owned by him, the form of the bond, the price, and the terms of sale to be agreed upon in writing by and between the plaintiff A. and B. This agreement, which was executed by C., describing him-

self as "agent for B.," recited that he had received from A. five hundred dollars in part payment of the land in question, "it being understood that a bond for a deed of said property is to be given to-day by B." By an unsigned agreement of the same date between A. and B. and another, B. agreed to sell, and A. and another to purchase, the land in question, according to certain terms therein set forth. The bill alleged a demand by A. on B. to execute the bond, and refusal by B., and the prayer was that B. be restrained from making a deed of the land, or placing any encumbrance thereon, and that he be ordered to execute and deliver to A. a bond as aforesaid. The case was referred to a master, who found, upon the evidence, subject to the legal construction of the contracts, that B. put the property in C.'s hands to procure a purchaser, to advertise the same, and to obtain offers of purchase; that C. had no authority to complete a contract of sale without submission to and authority from B.; that A. made to C. an offer, and was informed that it would have to be communicated to B., and that the offer was subsequently accepted "subject to a proper written contract being prepared." It did not appear that B. knew of the receipt for five hundred dollars, but it did appear that A. knew, when he paid the money to C. and obtained the instrument, "that, although the price was fixed, there were other points to be determined and details to be settled, and what such points and details were, and that the same were to be incorporated into a written agreement, and submitted to and approved by the defendants as terms of the sale." *Held*, that it was not necessary to consider whether the receipt for five hundred dollars was sufficient of itself to satisfy the Pub. Sts. c. 78, § 1, cl. 4, inasmuch as some of the essential terms were still to be agreed upon, and to be expressed in an instrument in writing to be signed by the parties; and that it could not be contended that B. ratified the act of C., inasmuch as it did not appear that B. had any knowledge of it.

A bill in equity was brought to enforce specific performance of an agreement signed by B. and the other owners of real estate to sell it to A. and another. The agreement was then put into the custody of C., as the agent of B. and the other owners, with authority to deliver it to A. and the other person on his being satisfied of their financial responsibility. There was nothing in the evidence to show that C. acted for any one but the defendants in holding the paper, and the paper was never delivered. *Held*, that, if C. was not satisfied in his own mind of the fact that A. and the other person were financially responsible, he had no authority from his principals to deliver the agreement; that, until he did deliver it, they could revoke his authority; and that, although the agreement was signed by the parties, yet as there was no delivery it never took effect, and could not be considered a sufficient memorandum within the statute of frauds.

LATHROP, J. This is a bill in equity inserted in a writ of summons and attachment, dated January 17, 1891, and returnable to the Superior Court. The bill alleges that the defendants, by a written agreement under seal, duly authorized by them, and for a valuable consideration, promised and agreed to execute, on January 15, 1891, a bond for a deed of a certain parcel of land, then owned by them, on the corner of Main Street and Railroad Row in Springfield, known as the Massa-

soit House property; that "the form of said bond, and price and terms of sale, were agreed upon in writing by and between the plaintiff and defendants, a copy of which agreement in writing is hereto annexed, marked A, together with the written memorandum of the form of said bond, the price and terms of sale."

The agreement A, which is executed by George W. Rice, describing himself as "agent for Marvin Chapin and heirs of Ethan Chapin," and dated January 15, 1891, is as follows: " Received of Joseph F. Callanan five hundred dollars, in part payment of real estate known as the Massasoit House property, on Main Street and Railroad Row, in Springfield, said real estate including one hundred and seventy-seven feet on Main Street, and one hundred and eighty-one feet deep, and on Railroad Row, it being understood that a bond for a deed of said property is to be given to-day by Marvin Chapin and the heirs of Ethan Chapin." This is followed by an unsigned copy of an agreement, dated January 15, 1891, between Marvin Chapin, Amelia C. Haile, and E. F. Ward, of the first part, and Joseph F. Callanan and John O'Brien of the second part, by the terms of which the parties of the first part agree to sell, and the parties of the second part to purchase, the Massasoit House property, so called, the property to be conveyed by a warranty deed, within ten days, twenty thousand dollars to be paid at the time of the delivery of the deed, fifty thousand dollars in instalments of five thousand dollars each year from the date of the conveyance, with interest semiannually at the rate of four and one half per cent per annum, and the balance of one hundred thousand dollars, on demand, after ten years from the date of said conveyance, at the same rate of interest, the sums not paid in cash to be evidenced by the joint and several promissory notes of the parties of the second part, secured by a first mortgage upon the property conveyed, in the usual form, with a power of sale. The bill then alleges a demand by the plaintiff on the defendants to execute said bond, and a refusal on their part to do so; and that the plaintiff has ever been ready and willing to comply with and carry out all of his agreements in the premises.

The prayers of the bill are that the defendants be restrained

from making any deed of conveyance of such real estate, or placing any encumbrance thereon; and that the defendants be ordered to execute and deliver to the plaintiff "a good and sufficient bond, upon the terms agreed upon, for the conveyance by deed of said bond executed to him."

The case comes before us on a report of a justice of the Superior Court, who has reserved the case for our consideration upon the pleadings, the report of a master, exceptions taken by the defendants to this report, and a copy of the evidence taken before the master.

The defendants are Marvin Chapin, Mrs. Haile, and Mrs. Ward. The master finds that on January 15, 1891, they were, and for many years before had been, the owners of the Massasoit House property; that on December 20, 1890, they entered into contracts in writing with George W. Rice, by the terms of which Rice was to attempt the sale of the Massasoit House for the period of four months. He was also to advertise it, and "in case of a sale, at terms to be agreed upon by all the parties interested," Rice was to receive a sum named.

The master found, upon all the evidence, subject to the legal construction of the contracts, that the defendants put the real estate into the hands of Rice for sale, with authority to procure a purchaser, to advertise the property for sale, to obtain proposals or offers of purchase, and to submit such proposals or offers to the owners for their approval; and that Rice had no authority to complete a contract of sale, or to sign such contract on behalf of his principals, unless, upon his submission to them of the offers of purchase, he should receive such authority. We are of opinion that this finding of the master is but an interpretation of the language contained in the contracts, and is fully warranted by their terms.

It further appears, from the report of the master, that the plaintiff made to Rice an offer for the land, and was informed that his offer would have to be communicated to the owners; that this offer was subsequently accepted, "subject to a proper written contract being prepared." It does not appear from the report of the master that the defendants knew of the execution of the receipt marked A; but it does appear that the plaintiff knew at the time he paid the five hundred dollars to Rice, and

received this instrument, " that, although the price was fixed, there were other points to be determined and details to be settled, and what such points and details were, and that the same were to be incorporated into a written agreement, and submitted to and approved by the defendants as terms of the sale."

On these findings of the master, it is clear that the bill as framed cannot be maintained. The bill proceeds upon the theory that Rice had authority to sign the receipt A, and asks the court to order the defendants to execute the agreement, which, as appears from the master's report, was subsequently drawn up. We need not, therefore, consider whether the receipt A is sufficient of itself to satisfy the statute of frauds, Pub. Sts. c. 78, § 1, cl. 4, inasmuch as some of the essential terms were still to be agreed upon, and to be expressed in an instrument in writing to be signed by the parties. See *May* v. *Ward,* 134 Mass. 127 ; *Ashcroft* v. *Butterworth,* 136 Mass. 511 ; *Wood* v. *Midgley,* 5 DeG., M. & G. 41, as explained in *Freeland* v. *Ritz,* 154 Mass. 257, 259 ; *Ridgway* v. *Wharton,* 6 H. L. Cas. 238 ; *Fitzmaurice* v. *Bayley,* 9 H. L. Cas. 78 ; *Rummens* v. *Robins,* 3 DeG., J. & S. 88. It cannot be contended that the defendants ratified the act of Rice, inasmuch as it does not appear that they had any knowledge of it.

The case has, however, been argued upon the theory that the so called bond for a deed was so executed as to be binding upon the defendants ; and, as the bill might be amended to meet this view of the case, if the plaintiff's contention is correct, we proceed to consider this question. The master finds that the agreement annexed to the bill embodied the terms of sale as they were orally agreed upon by the parties ; and that this instrument was signed by the defendants ; that it was signed for Mrs Ward, by a duly authorized attorney, " as assenting to it in her behalf, and for the purpose of having the instrument ready for delivery, as far as Mrs. Ward was concerned, and intending that it should be delivered to Callanan, and with the expectation that, when the other defendants had signed the instrument, they would so deliver it."

The master further finds that this instrument was signed by the other defendants, " upon the condition that it was not to be delivered unless the parties Callanan and O'Brien were finan-

cially responsible, and unless it should be ascertained, upon inquiry by David A. Reed, that the said Callanan and O'Brien were financially responsible"; that said agreement was put into the custody of Reed "for the benefit of all parties interested," and was to be delivered to the plaintiff, if the boundaries were correctly stated in the instrument, and if Callanan and O'Brien were financially responsible, and if it should be ascertained upon inquiry by Reed "that the said Callanan and O'Brien were financially responsible." The master then finds that the boundaries were correctly stated in the instrument; that Callanan and O'Brien were financially responsible; "and it was ascertained, or could have been ascertained upon inquiry by the said Reed, that the said Callanan and O'Brien were financially responsible at the time when he finally and absolutely refused to deliver the said agreement to the said Callanan; . . . and that the facts then existing and ascertained did not justify the said Reed in thus refusing to deliver the said agreement to the said Callanan; and that the said Reed was not acting in good faith when he burned and destroyed the said agreement."

It appears from the master's report, that it was not until the afternoon of January 15 that the defendants had any knowledge who the persons were who had made an offer for the property; that, after the agreement was signed by Chapin upon the conditions found by the master, Reed took the agreement and procured the signature of Mrs. Ward, by her attorney, and also the signature of Mrs. Haile, upon the conditions above stated; that Reed, after the paper had been thus signed, "immediately made inquiry of various business men in the city of Springfield as to the financial responsibility of Callanan and O'Brien, and reported to Mrs. Haile and to Marvin Chapin that the financial responsibility of the purchasers was not such in character as Rice had represented it to be"; that on the evening of that day Callanan demanded the immediate delivery of the agreement, and Reed refused to deliver it at that time, and until further inquiry could be made as to the financial responsibility of the purchasers; that on that day and on the 16th Reed made further inquiries; and that on the 17th he took the instrument to the home of Chapin, and there, in his presence and with his assent, burned said agreement.

The defendants have taken various exceptions to the report of the master. The first relates to the finding that Reed burned the instrument with the assent of Chapin. The defendants contend that the master should have found that Reed burned it in accordance with the instructions of Chapin. The only evidence in the case on this point comes from Reed, and he testified that he burned the paper in accordance with the instructions of Chapin. Whether the master was warranted in finding as he did on this testimony is immaterial in the view we take of the case.

Nor do we deem it important to consider the other exceptions in the case, except so far as they bear upon the question of the agency of Reed. The principal exception is to the finding that the agreement " was put into the custody of said Reed by the said defendants for the benefit of all parties interested," if by that is meant for the benefit of Callanan and O'Brien, as well as for the benefit of the defendants. We find nothing in the evidence to show that Reed acted for any one but the defendants in holding the paper. So far as Chapin and Mrs. Haile are concerned, the evidence is clear that Reed was to satisfy himself as to the financial condition of Callanan and O'Brien, and was not to let the paper go out of his hands until he was satisfied. As for Mrs. Ward, her attorney testified that when he signed her name to the paper it was not completed; that he merely put her name. to it in order that, if Chapin and Mrs. Haile saw fit to complete it, it might be done in his absence, so far as his client was concerned; and that he executed it in order that it might be delivered when the other parties were ready to deliver it.

The paper then, signed by the defendants, was in the hands of Reed as the agent of the defendants, with authority to deliver it on his being satisfied of the financial responsibility of Callanan and O'Brien. The sum to be paid by them in cash was a large one, and the responsibilities to be incurred by them were larger. O'Brien lived in a distant city. The paper signed by Rice called for a bond for a deed to be given that day; and although this paper was not binding upon the defendants, Callanan supposed that it was, and insisted upon a delivery of a bond for a deed that day. To say that Callanan

and O'Brien were financially responsible, and that this could have been ascertained, is of no consequence. If Reed was not satisfied in his own mind of the fact, he had no authority from his principals to deliver the agreement; and until he delivered it, they could revoke his authority. See *Foster* v. *Mansfield*, 3 Met. 412, 415; *Daggett* v. *Daggett*, 143 Mass. 516; *Watkins* v. *Nash*, L. R. 20 Eq. 262.

Although the agreement was signed by the parties, yet, as there was no delivery, it never took effect, and cannot be considered a sufficient memorandum within the statute of frauds. *Parker* v. *Parker*, 1 Gray, 409. *Cagger* v. *Lansing*, 43 N. Y. 550. *Campbell* v. *Thomas*, 42 Wis. 437. *Popp* v. *Swanke*, 68 Wis. 364. *Wier* v. *Batdorf*, 24 Neb. 83. *Comer* v. *Baldwin*, 16 Minn. 172. *Johnson* v. *Brook*, 31 Miss. 17.

*Bill dismissed.*

*G. D. Robinson*, (*W. S. Robinson* with him,) for Amelia C. Haile.

*G. Wells*, for Emma F. Ward.

*C. L. Long*, for Marvin Chapin.

*T. M. Brown & W. B. Stone*, (*E. H. Lathrop* with them,) for the plaintiff.