AUGUSTUS F. LASH vs. FREDERICK L. AMES.

Suffolk.　January 17, 1898. — June 24, 1898.

Present: FIELD, C. J., ALLEN, KNOWLTON, LATHROP, & BARKER, JJ.

*Conversion — Landlord and Tenant — Reasonable Time — Law and Fact —
Action — Agency — Evidence.*

Whether a tenant at sufferance is entitled to a reasonable time to remove his goods
after a notice to quit from his landlord, a ruling to that effect is not required in
an action by the tenant against the landlord for conversion of the tenant's goods
which the landlord has removed, if the judge cannot, as requested, rule, as matter
of law, that the time which elapsed between the notice and the removal was not
a reasonable time. Where the facts are not disputed, what is reasonable time is
a question for the court.

A landlord is entitled, at least after the lapse of a reasonable time from the giving
to a tenant at sufferance of a notice to quit, if the tenant does not remove his
goods, to remove them himself, and, having offered to take them where the ten-
ant wishes, and received no directions in the matter, if he stores them subject to
the tenant's order he is not liable to an action for conversion of the goods.

In an action by a tenant at sufferance against his landlord for the conversion of
goods which, after a notice to quit, the latter removed, the defendant testified
that he had several conversations with A., in which A. told him that the
occupant of the building was the husband of one of the beneficiaries under a
trust held by A., and in order to carry through the sale of the building to the
defendant, and get the occupant, who was the plaintiff, to vacate the premises,
it would be necessary to pay him a certain sum of money. The plaintiff, when
asked, "Then you did authorize A. to deal with the question when you should
get out," answered, "Certainly, I ordered him to." He further testified that
among the controversies was one about moving out; and that "A. consulted
with us all through, and we acquiesced in everything." *Held,* that the judge
was warranted in finding that A. acted as the plaintiff's agent; and that the
defendant's testimony was rightly admitted in evidence.

TORT, for the conversion of a lot of second hand building
materials. Writ dated May 14, 1889. Trial in the Superior
Court, without a jury, before *Dunbar*, J., who found for the
defendant; and reported the case for the determination of this
court. The facts appear in the opinion.

*C. E. Hellier & W. H. S. Kollmyer*, for the plaintiff.

*J. H. Benton, Jr.*, for the defendant.

LATHROP, J. The record in this case is unnecessarily volu-
minous, consisting as it does of an agreed statement of facts, and
forty pages of evidence, with the questions and answers set forth

at length, together with certain rulings requested, and those given, the general finding for the defendant, and a brief report of the case to this court. Such a method of presenting a case to us for the determination of the questions of law involved is to be condemned. See *Roskee* v. *Mount Tom Sulphite Pulp Co.* 169 Mass. 528.

The general facts relating to these questions may be briefly stated thus. In the early part of 1887, Francis H. Lincoln was a trustee, under the will of John Hennessey, of an estate in Boston, which was then occupied by the plaintiff as a tenant at will, he holding over after the expiration of a written lease. The plaintiff's wife, Bridget A. Lash, was a daughter of John Hennessey, and one of the *cestuis que trust.* Lincoln, during the last of January or the first of February of that year, was negotiating a sale of the estate to the defendant. Some question arose as to whether Lincoln had power to sell, and he agreed to petition the Probate Court for leave to sell. On February 9, 1889, Lincoln and the defendant executed an agreement in writing, by the terms of which Lincoln agreed to sell and the defendant to buy the estate, the premises to be conveyed on or before March 9, if leave to sell were obtained from the Probate Court. The price to be paid was eleven dollars per square foot, which included " the amount to be paid to Augustus F. Lash and Bridget A. Lash, the tenants of said premises, for damages to their tenancy." Full possession of the premises was to be delivered to the defendant at the time of the delivery of the deed.

On the same day that the agreement was signed, Lincoln notified the plaintiff that he had agreed to sell the premises, and that the plaintiff was to be paid $3,000, from which was to be deducted rent and unpaid taxes. Lincoln and the plaintiff settled upon this basis upon March 9. The trustee was under no obligation to pay the plaintiff this sum, but it was paid to prevent his making, through his wife or otherwise, opposition to the sale, and thus to enable the trustee to obtain the necessary assent for leave to sell, and pursuant to the agreement of sale. Whether it was paid for any other purpose was in dispute. All the parties interested in the trust estate, including the plaintiff, requested that the prayers of the petition be

granted. On March 4, the Probate Court made a decree allowing the trustee to sell; and the estate was conveyed to the defendant on March 9; and in the afternoon of the same day the defendant's attorney gave a notice in writing to the plaintiff, as follows, omitting the date, address, and the signature : "The premises occupied by you at 149 and 151 Essex Street, Boston, have been conveyed to Frederick L. Ames. Please remove your property therefrom and vacate the premises at once. Mr. Ames desires to tear down the building for purposes of rebuilding upon the estate without delay, and while he does not wish to incommode you further than is necessary, he must take down the building at once, and you are hereby notified to vacate the premises forthwith."

Before the conveyance the plaintiff had made preparations to move. On February 15, 1889, he had entered into a contract to lease a lot of land, and had bought a building thereon. He was to have room to store his goods as the owner of the building moved his goods out. He began to move his stock in trade, which consisted of old building materials, on March 4. On that day he moved one load, and one or more loads on each of the following days, namely, March 6, 8, 11, 12, 13, 14, but the greater portion of his stock was still remaining in his store on Essex Street. On March 13, the defendant's agents began to take down the building. The plaintiff on the same day wrote to the defendant asking that this work be suspended, and that he be given further time to remove the property. To this the defendant's attorney replied that the property would be removed the next day to a suitable place of storage at the plaintiff's risk and expense. On the same day the defendant's agent also told the plaintiff that unless the plaintiff desired the property moved to some other place he would move it the next day to 183 Washington Street; but if the plaintiff desired it moved to any other place he would so move it. On March 14, the defendant, with seven men and seven wagons, moved thirty loads of the plaintiff's property, and the plaintiff moved fourteen loads; and the building was cleared. There was evidence that the two sets of men did not interfere with each other; and that the person who had charge in behalf of the defendant told the plaintiff that he would take the goods anywhere he would say.

It is stated in the agreed facts that the defendant's agents used proper care, did no unnecessary damage, and used no unnecessary force. On July 15, 1889, the defendant through his counsel offered to remove the goods to any place the plaintiff might name, without expense to him. This offer was declined, and in the year 1894, while the property was in the possession of the defendant, it was destroyed by fire, without fault on the defendant's part. The removal of the goods on March 14, 1889, is the conversion relied on.

The plaintiff requested the court to rule as follows: " 1. The plaintiff upon the conveyance by Lincoln to Ames became a tenant at sufferance of Ames." This instruction was given. " 2. The plaintiff was entitled to a reasonable time, after notice to quit from Ames, to remove his property, and what was a reasonable time is a question of law for the court." The court refused to give the first part of this request, but ruled that "reasonable time" was a question for the court. . " 3. The time which elapsed between the notice from Ames to the plaintiff and the seizure of the plaintiff's stock by Ames was not a reasonable time. 4. The seizure of the plaintiff's goods was unlawful, and was a conversion of the same by the defendant." These instructions the court refused to give. There was also a question of the admissibility of the testimony of the defendant as to certain conversations which the defendant had with Lincoln.

1. The tenancy at will of the plaintiff was terminated by the alienation of the land to the defendant; and he became a mere tenant at sufferance, and was not entitled to notice to quit. *Howard* v. *Merriam,* 5 Cush. 563, 574. *Benedict* v. *Morse,* 10 Met. 223. The plaintiff could not however be sued as a trespasser nor legal process be begun against him to recover possession of the land until he was notified of the sale, and a reasonable opportunity given him to remove his possessions. *Ellis* v. *Paige,* 1 Pick. 43, 49, and 2 Pick. 71, note. *Pratt* v. *Farrar,* 10 Allen, 519, 521. *Clark* v. *Wheelock,* 99 Mass. 14, 15. *Antoni* v. *Belknap,* 102 Mass. 193, 200. But, as was held in *Hooton* v. *Holt,* 139 Mass. 54, a notice calling for immediate possession is sufficient, and if an action is brought under the Pub. Sts. c. 175, without allowing time enough to remove, this is a matter to be shown in defence.

Whether the same rule applies where the action is brought, as in this case, by the tenant at sufferance against the landlord need not be determined. See *Low* v. *Elwell*, 121 Mass. 309, and cases cited; *Coughlin* v. *Gray*, 131 Mass. 56; *Stone* v. *Lahey*, 133 Mass. 426; *Twombly* v. *Monroe*, 136 Mass. 464. We are of opinion that, whether the plaintiff was entitled to a reasonable time to remove his goods after a notice to quit from the defendant, a ruling to this effect was not required, as the judge could not have given, as matter of law, the third ruling requested, that the time which elapsed between the notice from Ames to the plaintiff and the seizure of the plaintiff's stock by Ames was not a reasonable time.

Where the facts are not disputed, what is reasonable time is a question for the court. The facts which we have already recited clearly show that the plaintiff had ample time to remove his goods.

2. The fourth ruling requested was properly refused. The defendant was entitled to possession of the building, free from goods, and he was entitled, at least after the lapse of a reasonable time from giving the notice, if the plaintiff did not remove them, to put them out himself. He offered to take them where the plaintiff wished, and, as the plaintiff would give no directions in the matter, the goods were stored subject to the plaintiff's order. The case falls within the principle laid down in *Shea* v. *Milford*, 145 Mass. 525.

3. The only remaining question is as to the admissibility of the testimony of the defendant as to certain conversations he had with Lincoln. The defendant testified: "I had several conversations with him [Lincoln], in which he told me that the occupant of the building was the husband of one of the beneficiaries under his trust, and in order to carry through the sale and get him to vacate the premises it would be necessary to pay him quite a sum of money. Finally, he told me he had got to pay Lash $3,000 to get out, during the time in which it was necessary to obtain the assent or approval of the Probate Court, and to prevent his opposing the approval by the court through his wife."

To make this evidence admissible, it was necessary to show that Lincoln acted in the matter as the agent of the plaintiff.

The latter, when asked, " Then you did authorize Lincoln to deal with the question of when you should get out ? " answered, " Certainly, I ordered him to."   He further testified that among the controversies was one about the time of moving out; and that " Lincoln consulted with us all through, and we acquiesced in everything."

We are of opinion that the judge was warranted in finding that Lincoln acted as the agent of the plaintiff, and that the testimony of the defendant was rightly admitted in evidence.

*Judgment for the defendant.*