ALBERT C. MENTZER & another *vs.* HUDSON SAVINGS BANK.
SAME *vs.* SAME.

Middlesex.    November 14, 1907. — February 26, 1908.

Present: KNOWLTON, C. J., HAMMOND, LORING, BRALEY, & RUGG, JJ.

*Landlord and Tenant.   Frauds, Statute of.*

Where a tenant at will, paying monthly rent on the first day of each month, has received from his landlord a notice in writing to quit on the first day of the second month after the date of the notice, which under R. L. c. 129, § 12, is sufficient to terminate the tenancy, *it is doubtful* whether subsequent negotiations between the parties for the making of a lease in writing for a term to begin on the day of the termination of the tenancy at will, which before that day are broken off without the making of a lease, no occupancy after that day except under the lease being discussed, can constitute a waiver by the landlord of his rights under the notice to quit.

Where a tenancy at will has been terminated by the landlord giving a lease in writing to a third person to take effect upon a day of which the tenant was given reasonable notice, the provisions of R. L. c. 129, § 12, in regard to the termination of a tenancy at will by a notice to quit are immaterial, the landlord having resorted to a different method of termination.

In an action for the alleged breach of a contract to give the plaintiff a lease in writing of certain premises, the defendant set up the statute of frauds. The plaintiff introduced in evidence as a memorandum of the contract an instrument of lease which, with a duplicate, had been sent by the defendant to the plaintiff for his signature, and was left to be signed before a certain hour or not at all. The instrument had on its back an indorsement that it was a lease from the defendant to the plaintiff and that it had been brought "at about 2.30 P. M. with instructions to sign before 3 P. M. or not good." At three o'clock the agent of the defendant called for the lease, and, on learning that it had not been signed, demanded its return. The plaintiff gave him one of the duplicates, but could not give him the other, which was the one put in evidence, because he had sent it to be examined. The next day the plaintiff signed the duplicate of the lease which he had retained and asked the defendant to sign it. The defendant refused to do so. *Held,* that the paper was prepared and used, not as a memorandum, but as a draft of a lease which never was executed as such by the defendant, and that it never was delivered to the plaintiff either as a lease or as a memorandum, and therefore could not satisfy the statute.

TWO ACTIONS, the first of tort and the second of contract, both by Albert C. Mentzer and Cora S. Mentzer, his wife, against the Hudson Savings Bank, the first action, with counts in the nature of trespass *quare clausum* and trover, being for an alleged

unlawful eviction of the plaintiffs from a store on the first floor of the bank building of the defendant on Main Street in Hudson occupied by the plaintiffs as copartners in the millinery business, as tenants at will of the defendant, and the second action being for the alleged breach by the defendant of a contract to give the plaintiffs a lease of the store in question for a term of three years beginning on June 1, 1905. Writs dated respectively August 21, 1905, and March 15, 1907.

In the first action the defendant's answer was a general denial. In the second action the defendant, in addition to a general denial, alleged that the contract set forth in the declaration was one for the sale of lands, tenements, hereditaments, or of some interest in or concerning them, and that there was no sufficient memorandum or note of the agreement in writing signed by the defendant or by any one thereunto by it lawfully authorized as required by R. L. c. 74.

In the Superior Court the cases were tried together before *Hitchcock*, J.

The plaintiff Albert testified that he and his wife had been copartners in the millinery business since 1897, and in 1902 became tenants of the defendant at the premises in question, occupying them under an oral agreement and paying $50 rent on the first day of each month. The store was in a desirable situation in the centre of the business section of Hudson, and the net profits from the business for the year 1904 were $3,400. During the last week in April, 1905, damage occurred to the stock in trade of the plaintiffs by reason of water escaping from an office overhead, then occupied by a tenant of the defendant, and the plaintiffs rendered a bill to that tenant for the damage. On May 5 following, the plaintiffs received a letter from the defendant's treasurer, saying, " If you will make a bill to the Hudson Savings Bank for the damage done to hats by water and leave the damaged goods with the bank I will send you a check for the amount of your bill rendered to Mr. Boynton."

In consequence of this letter the plaintiffs submitted to the defendant a bill as requested, and on May 9 the plaintiff Albert was present by request at a meeting of the officers of the defendant bank, where there occurred some dispute as to the correctness of the bill rendered. The plaintiff Albert then returned

to his store and on the same day received from the defendant a check for the amount of the damage claimed by him, together with the following notice:

"Hudson, Mass., May 9, 1905.

"A. C. and C. S. Mentzer

"You are hereby notified to quit and deliver up on the first day of July next the premises now held by you as tenant of Hudson Savings Bank at No. 42 Main Street in this town.

"Hudson Savings Bank,

"By Daniel W. Stratton, Treas."

Four or five days after the delivery of the notice the plaintiff Albert went to the office of the defendant's treasurer and had some talk with him with regard to the occupation of the premises.

On May 29 the plaintiffs received a call from a representative of the defendant, one Cochrane. This was in the store, and both plaintiffs were present. The plaintiff Albert testified, "Mr. Cochrane said he had been chosen a committee of one to settle the matter. And during our conversation — which was leading to the damage, etc. — he said he was satisfied with the damage; that we could have a lease, and there would be no more trouble about it."

On May 31 the plaintiffs received a visit from Cochrane, who came to their store about 9 A. M., bringing with him two copies of a lease. The plaintiff Albert was alone in the store, the other plaintiff being ill. Cochrane then stated to that plaintiff that if the leases were signed by three o'clock in the afternoon it would be all right. That plaintiff replied that he could not have the leases signed at that time, as his wife was ill, and he could not get legal advice as to the meaning of the leases; that he could not sign them before eight o'clock the next morning. Cochrane said, "All right," and went out, leaving the two copies of the lease with that plaintiff, one of which was introduced in evidence. It was dated May 31, 1905, and provided for a term of three years from June 1, 1905, for the rent of $600 a year.

The instrument in evidence was executed under seal by both of the plaintiffs. On the back was the following indorsement:

" Lease.
" From Hudson Savings Bank
   To Albert C. Mentzer et ux
   Dated May 31, 1905
   Expires May 31, 1908
   Recd from Mr. Cochrane
   at about 9.30 a. m.
   May 31 taken away
   in about 15 m
   Brought again at
   about 2.30 P. M. with
   instructions to sign
   before 3 P. M. or not
   good."

The plaintiff Albert testified that this indorsement on the top was on the instrument when it was delivered to him by Cochrane.

In about twenty minutes Cochrane came back to the plaintiffs' store and stated to the plaintiff Albert that the investment committee of the bank were to have a meeting that afternoon, and that he should like to take the leases to see if they would accept them.   The plaintiff Albert asked him if he would return them to him so that he could have them by six o'clock that night, and Cochrane replied that he would.   Cochrane then left the plaintiffs' store, taking with him the leases.   About 2.30 in the afternoon, Cochrane came back to the plaintiffs' store bringing with him the two leases.   He stated at that time that the investment committee of the bank had approved them, but that it wanted them signed by three o'clock or they would lease to other parties.   The plaintiff Albert replied that it would be impossible for him to sign the leases without having legal advice, and he wished to have until eight o'clock on the following morning so that he could get advice on them and find out whether it was a right lease for him to sign or not.   Cochrane then left the office. He returned at three o'clock and asked the plaintiff Albert, " Are they signed ? "   That plaintiff replied that they were not signed and could not be before eight o'clock on the following morning, or until he, that plaintiff, could get advice.   Cochrane stated that it would be too late, and started to leave the store,

taking with him the envelope which had contained the leases. He noticed that there was but one lease in the envelope, and asked where the other lease was. The plaintiff Albert replied that he had sent it out to be examined. Cochrane made no further remark and left the store.

On June 5 the plaintiffs wrote to the defendant the following letter :

" Hudson, Mass., June 5, 1905.

" Investment Committee of the

Hudson Saving Bank

Hudson Mass.

" Gentlemen

" After making several unsuccessful attempts to see Mr. Cochran on June 1 & 2, we have decided to write to the Investment Committee direct and say that after taking council and carefully considering the lease left with us May 31 at 2.30 P. M. by your committee Mr. Cochran, we have decided to sign the same, and wish to say that the one already in our possession is signed, and that we are ready to sign the one held by you at your earliest convenience.

" Yours Very Truly

" A. C. & C. S. Mentzer."

They received in reply a letter or notice from the defendant as follows :

" Hudson, Mass., June 6, 1905.

" A. C. and C. S. Mentzer

" Your favor of June 5 duly received and was placed before the Committee of Investment this afternoon and they instructed me to notify you that a lease has been executed and delivered to other parties to take effect July 1, 1905 of the premises you now occupy and desire that the premises may be entirely vacated so that we can deliver the above to the new tenants on that day. By this you will see that the bank could not give you a lease if they wished and you should make your arrangements accordingly.

" Respectfully yours,

" Daniel W. Stratton, Treas."

The plaintiff Albert further testified that he was unable to consult his own counsel until about seven o'clock on the evening

of May 31. The plaintiff Albert had no further conference or conversation with the defendant until July 3, when there was some talk between that plaintiff and Stratton, the treasurer of the bank, with regard to the removal of fixtures.

It was agreed by counsel that the defendant executed and delivered a lease of the same premises to one French, dated July 1, 1905, for the term of three years thereafter and that French, acting under this lease, gave a sufficient notice to quit to the plaintiffs, who thereupon surrendered the premises to him on July 3, protesting to the defendant against the expulsion in a letter which was put in evidence.

At the close of the plaintiffs' evidence, including an agreed statement of facts, the judge ruled that upon the evidence presented the plaintiffs were not entitled to recover, and ordered a verdict for the defendant in each of the cases. The plaintiff alleged exceptions.

The case was submitted on briefs.

*H. Parker & H. H. Fuller*, for the plaintiff.

*S. K. Hamilton & T. Eaton*, for the defendant.

RUGG, J. The plaintiffs were tenants at will of the defendant, paying monthly rent on the first day of each month. On May 9, 1905, they received from the defendant written notice to quit and deliver up the premises on July 1 following. This was sufficient to terminate the tenancy. R. L. c. 129, § 12. There was some oral discussion later in May between the plaintiffs and a representative of the defendant as to a written lease, the term of which was to begin on July 1. These negotiations never ripened into a binding contract, and were broken off by the defendant on May 31, and no written lease was executed, and there was no evidence that occupancy by the plaintiffs after July 1 was spoken of, except in connection with the written lease. It is doubtful whether these facts in any aspect constitute a waiver of the rights of the defendant under its notice to quit. But the tenancy of the plaintiffs was terminated, and they became tenants at sufferance by virtue of a lease, given by the defendant to a lessee other than the plaintiffs, to take effect on July 1, of which the plaintiffs were given due notice in writing on June 6. *Pratt* v. *Farrar*, 10 Allen, 519. The plaintiffs have no right of action under these circumstances against the land-

lord.   They cannot maintain trespass *quare clausum fregit* because they have neither title nor lawful right to possession against either the landlord or the new tenant.   *Low* v. *Elwell*, 121 Mass. 309.   The plaintiffs contend that, notwithstanding these familiar principles, the landlord must give them the notice required by R. L. c. 129, § 12, or be liable to them in trespass, if he fails to do so.   One conclusive answer to this argument is that this statute does not point out the only method of terminating a tenancy at will.   It does not purport to be exclusive of all other remedies.   The tenancy at will of the plaintiffs was terminated in another legal way, and they were converted into tenants at sufferance, and the defendant is under no liability to them. *Lash* v. *Ames*, 171 Mass. 487.

The plaintiffs seek to recover for breach of an alleged contract to give them a written lease.   There was no evidence of a memorandum in writing as to this contract sufficient to satisfy the statute of frauds.   R. L. c. 74, § 1.   An unsigned lease, complete in all respects save the signatures of the parties, was handed by an agent of the defendant to one of the plaintiffs, with the oral stipulation that it must be signed by three o'clock in the afternoon, or a lease would be given to some one else. There had been preliminary talk before this time, but some of the essential elements of a lease had not been even referred to, for nothing had been said as to the rent to be reserved.   The agent for the defendant called for the leases at three o'clock in the afternoon, ascertained that they were not signed, and took away the only one which the plaintiffs could then give him. Plainly there was no delivery of any writing under the statute. The papers were prepared and used, not as a memorandum but as a contract, and were never executed as such.   *Hazard* v. *Day*, 14 Allen, 487.   *Sanborn* v. *Sanborn*, 7 Gray, 142.   *Parker* v. *Parker*, 1 Gray, 409.

*Exceptions overruled.*