STEWART BROWNE *vs.* JOSEPH FAIRHALL, executor.

Essex.   November 8, 1912. — January 27, 1913.

Present: RUGG, C. J., BRALEY, SHELDON, & DECOURCY, JJ.

*Contract,* Performance and breach, Construction.   *Executor and Administrator. Survival of Action.*

In an action against an executor for the breach by the defendant of a contract under seal made by the defendant's testator, the defendant contended that the obligation of the testator was personal and that performance of the contract had been rendered impossible by his death. The contract was for the sale to the testator of certain securities and provided for payment within ninety days from the date of the contract in part in cash and in part by the testator's interest bearing promissory notes, payable to himself on or before three years from the date of the contract and by him indorsed in blank, and that within the ninety days "all the moneys, checks, securities, deeds and documents" to be paid or delivered by either party to the other should be deposited as escrows with a designated trust company. The contract closed with the express stipulation that it should be "binding upon and inure to the benefit of the respective heirs, executors and administrators" of the parties, "as to each and all of its provisions, whether so expressed in appropriate words or not." The testator died forty-two days after the date of the contract without having made any of the deliveries called for by the contract. *Held,* that the contract could not be enforced against the executor. *Held, also,*

that the express stipulation that the contract should bind the heirs, executors and administrators of the parties referred only to the performance of the obligations growing out of the contract after all the papers and instruments required by it had been delivered as escrows to the trust company.

CONTRACT for a breach by the defendant of the contract in writing described in the opinion. Writ dated November 13, 1909.

In the Superior Court the case was tried before *Raymond,* J. The material facts are stated in the opinion. At the close of the evidence the defendant asked for the following rulings:

"1. Upon all the evidence in the case the plaintiff is not entitled to recover.

"2. The covenants and agreements under the contract, on the part of the defendant's testator, were personal, were not intended to be and, as a matter of law, are not binding upon his estate.

"3. As the contract required the defendant's testator to give his personal note or notes to the amount of $200,000 payable at such time or times within three years from their date as the testator himself should determine, his death renders the performance of the contract in this respect impossible, and the defendant could give no note or notes under the contract that would be binding upon the estate."

These rulings were refused subject to exceptions by the defendant. There was a verdict for the plaintiff. The presiding judge reported the case for determination by this court, the report stating that, if there was error in his rulings upon the defendant's request and the action did not survive, judgment was to be entered for the defendant.

*C. A. Sayward,* (*J. P. Sweeney* with him,) for the defendant.

*R. O. Harris,* (*W. A. Morse* with him,) for the plaintiff.

SHELDON, J. The first question in this case is whether the cause of action declared on survived the death of John B. Browne, hereinafter called the testator. Perhaps a more exact statement of this question would be, whether by reason of the death of the testator the agreement between the original parties became impossible of fulfilment, and whether the parties to the agreement foresaw that this contingency might arise and guarded against it by their stipulations, so that there still may be a remedy upon the contract, even though an exact performance of all its provisions

may have become impossible by reason of the death of one party to the agreement.

The agreement was dated July 30, 1908. By its terms the plaintiff agreed to sell to the testator certain stock and bonds of a New York corporation. For these the testator agreed to pay to the plaintiff within ninety days from the date of the agreement the sum of $1,375,000 in cash, and $200,000 in the testator's own promissory notes payable on or before three years after the date of the agreement, bearing interest payable semi-annually at the rate of six per cent per year, made payable to the testator's own order and indorsed by him in blank, and to convey to the plaintiff by warranty deed certain described real estate situated in Chicago, Illinois, subject to a stated mortgage, with a policy of insurance upon the title, the premium upon which was to be paid by the plaintiff. Besides other stipulations not now material, the parties also agreed that within ninety days from the date of the agreement "all the moneys, checks, securities, deeds and documents" to be paid or delivered by either one to the other should be delivered in escrow to a trust company named, to be delivered by the trust company to the parties finally entitled thereto by the agreement. The agreement closed with the express stipulation that it should be "binding upon and inure to the benefit of the respective heirs, executors and administrators" of the parties "as to each and all of its provisions, whether so expressed in appropriate words or not." A supplemental instrument annexed to the principal agreement and bearing the same date provided in detail for the deliveries to be made in escrow to the trust company and for the deliveries to be made by that company to each one of the parties respectively.

The testator died on September 10, 1908, before the expiration of the ninety days which have been mentioned, not having (as we understand to be agreed by both parties to the action) made any of the deliveries, and of course being not yet in default by reason of such non-delivery.

This agreement provided in express terms for the performance by the testator of certain acts which could be done only by himself in person. In part payment for the stocks and bonds which he was to buy, he was to give to the plaintiff his own promissory notes for $200,000, drawn payable to his own order and in-

dorsed by himself in blank. These notes, it is plain, were to be drawn in such numbers and for such respective amounts as he should himself see fit, subject only to the requirement that they must together amount to the stipulated sum. They were to be payable at such time or times, within the prescribed limit of three years, as he should elect. The expectation that he might make at least some of them run for a somewhat protracted period is shown by the stipulation that they should bear interest payable semi-annually at the rate of six per cent per year. The notes were to be wholly unsecured, which shows that the personal responsibility of the maker was of weight in the minds of the parties. In the event which has happened, neither party could require the notes of any other person, or any other securities, or even a cash payment, to be substituted for these notes. Neither the testator nor his heirs or executor could be compelled to pay this large sum in any other way than that which had been stipulated for, by the testator's own notes, drawn as he might personally choose to draw them, in the respects which have been mentioned. The plaintiff could not have been required to accept payment of this amount either in money or in any other securities whatsoever; especially he could not have been required to accept notes given by heirs or an executor, with whose responsibility he might not have been content and by whose option in the particulars stated he had not agreed to abide. Of course the executor in his representative capacity could not bind the estate of the testator by giving such notes in the absence of authority delegated to him by the will. *Grafton National Bank* v. *Wing,* 172 Mass. 513. *Hadlock* v. *Brooks,* 178 Mass. 425, 438. *Howe* v. *Richardson,* 186 Mass. 259. But no such power is given by the will of this testator. Even if the plaintiff had consented to receive the notes of the executor instead of those of the testator, which does not appear, yet the executor could not have been required to give his own notes, or indeed any other notes than those specified in the agreement.

It follows that at the time fixed for the performance of the agreement, such performance had become impossible as to a material part of what was to be done by the testator. Without the performance of what thus had become impossible, neither party had the right to require fulfilment of the agreement by the other,

unless both parties had agreed upon some substitute for that which no longer was capable of being done, and that is not the case here. The performance of this agreement depended upon the ability of the testator to exercise the option which was given to him as to the number, the respective amounts and the dates of payment of the promissory notes which he was to give to the plaintiff. If before exercising that option and drawing and delivering these notes he had lost his senses and had become a mere lunatic, no longer capable of exercising his option and of acting thereon, the agreement would have been terminated, because the very basis of this material stipulation was that he should exercise his option. Performance of the whole agreement became impossible because it had become impossible to carry out one of its essential terms by giving the promissory notes of the testator such as had been contracted for, and the court cannot substitute for the giving of these notes any other mode of payment. The case comes under the general principle that where the performance of a contract depends upon the continued existence of any particular person or thing, there, if there is no warranty of such continued existence, performance is excused if before a breach of the contract its performance becomes impossible by reason of the death or destruction of such person or thing. Some of the cases in which this principle has been declared or illustrated are collected in *Hawkes* v. *Kehoe*, 193 Mass. 419. *Smith* v. *Preston,* 170 Ill. 179, 185. We do not find in the agreements declared on anything in the nature of a warranty, or absolute covenant against the contingency which has happened, such as could bring the case within the rule of *Rowe* v. *Peabody,* 207 Mass. 226, or *John Soley & Sons* v. *Jones,* 208 Mass. 561, 566.

There is nothing against the view which we have stated except the express stipulation in the agreement that it shall bind the heirs, executors and administrators of the parties. Some effect should of course be given to these words. But it is to be observed that by the agreement each party was bound to execute within ninety days all the papers and instruments called for and to deliver them all in escrow to a designated trust company. Once this step had been taken by each party, the obstacle which now prevents performance would have been removed. The testator's option would have been fully exercised; his notes would have been

delivered in escrow, as also would have been everything of which his delivery was required. The delivery in escrow would have been valid and binding upon the estate of each party, although his death had intervened before the delivery by the trust company. *Foster* v. *Mansfield*, 3 Met. 412. *Daggett* v. *Simonds*, 173 Mass. 340, 347. *Stockwell* v. *Shalit*, 204 Mass. 270. The deliveries to the trust company, when completed, were to be unconditional though in escrow, not conditional upon the happening of some future event, as in *Daggett* v. *Daggett*, 143 Mass. 516, 520, and *Callanan* v. *Chapin*, 158 Mass. 113, 119, 120. When therefore these deliveries in escrow had been made, the whole agreement well might have been, and well might be declared to be, binding upon and inuring to the benefit of the heirs, executors and representatives of each party. Effect may accordingly be given to this stipulation. That no further effect need be given to it is settled by our decision in *Marvel* v. *Phillips*, 162 Mass. 399. In that case, the agreement which was held to have been terminated by the death of one of the parties contained a provision like that which we are now considering; and the court said that this did not provide for a substituted performance in case of the death of the party, but merely imposed upon the executor the obligation to answer for any breach of the agreement committed by the party himself. And see the language of Allen, J., in that case, on p. 401.

We may add that one of the obligations of the testator was to give, within a period which expired before his death, the bond of a surety company in a stated sum to secure the performance by him of all the agreements made by him. If he failed to do this, there was a breach by him in his lifetime, for which of course an action could be maintained. But although this breach is specifically charged in one of the counts of the plaintiff's declaration, the issue thus presented does not appear to have been passed upon at the trial; no question upon it is raised by the report; and no argument upon it has been made by either party. We infer that the issue has been waived; and we are confirmed in this inference by the fact that the report, after stating the ruling made by the judge that the action survived (and it is not disputed that the whole question of the defendant's liability hinged upon this ruling), sets out the agreement of the parties that only issues as to the

measure of damages should be submitted to the jury, and expressly says that "all other questions were finally waived."

In this posture of the case, the first and third of the defendant's requests for rulings should have been given, for the reason that the cause of action, under the circumstances here presented, did not survive against the defendant. This conclusion makes it unnecessary to consider the other questions which have been argued. Upon the terms of the report, judgment must be entered for the defendant.

*So ordered.*