HARRIS *v.* DACUS.

4-7870                                             193 S. W. 2d 1006

Opinion delivered April 8, 1946.

Rehearing denied April 13, 1946

*W. Leon Smith,* for appellant.

*Bruce Ivy* and *Reid, Evrard & Roy,* for appellee.

ROBINS, J. Appellant brought this suit in the lower court to enforce specific performance of a contract under which he alleged appellees, A. P. Dacus and P. M. Dacus, through their agent, W. M. Burns, agreed to sell appellant a 24½ acre tract in Mississippi county, Arkansas. Appellee, J. H. Doan, was made a defendant, it being alleged that he had obtained a conveyance of the land

from A. P. Dacus, P. M. Dacus and Chloe Dacus, with full knowledge that these parties had already agreed to sell same to appellant, and appellant prayed that this conveyance to appellee Doan be canceled.

In their answer appellees denied that any contract to sell the property to appellant had ever been made, and they pleaded the statute of frauds in bar of any rights of appellant.

The lower court found all issues of law and fact in favor of appellees, and to reverse decree dismissing his complaint for want of equity appellant prosecutes this appeal.

On February 2, 1942, appellee, A. P. Dacus, wrote W. M. Burns, a real estate agent at Blytheville, the following letter:

"We received your letter of Jan. 31st with reference to the Creamery Package Company land located at Blytheville. As stated to you over the phone several days ago, our price is $3,000 net to us and it is all right for you to sell same for any amount above that price, however, we would not want to give anyone an option on same at this time as we have had two other parties that have been figuring with us in the last sixty days. Will be glad to hear from you from time to time with reference to same."

Appellant on February 4, 1942, gave Burns a check for $500, and signed the following document:

"OFFER AND ACCEPTANCE

"Feb. 4th, 1942

"To W. M. Burns, Agent

"You are hereby authorized to offer for my account the sum of three thousand, one hundred & no/100 dollars for the following described property:

"Block of land in Sec. 15 15.11, and known as the Creamery Package Mfg. Co. land south of Canning Plant, Blytheville, 24½ acres.

"This amount to be paid in the following manner: Cash or trade as per statement below $1,100. Loan to be assumed or placed for my account.

"Balance payable

"Balance two years, $1,000 each year,
"6% interest                                                    $2,000.00
                              "Total                           $3,100.00

## "TRADE OR OTHER SPECIAL CONDITIONS
### "GENERAL CONDITIONS

"It is understood that the owner or owners shall furnish complete abstract showing good title, or policies of title insurance, pay all taxes now due or delinquent, and make conveyance to me or my order by warranty deed, date of which shall fix time for dating of notes, adjustment of rents, interest and insurance. Possession given at once.

"Attached hereto is check for the sum of $500 to become part of payment on acceptance of this offer and if for any reason the offer is finally rejected said sum is to be returned without expense to me. This offer is to hold good if accepted within 10 days from date.

                              "Signature R. S. Harris

·'Phone                    Address

"THE ABOVE OFFER IS HEREBY ACCEPTED

this 5th day of Feb., 1942. We agree to pay a broker's commission of $100.
                    "..............................................Owners"

Mr. Burns then transmitted the above "Offer and Acceptance" to Dacus Lumber Company, "Attention Mr. A. P. Dacus," with the following letter dated February 4, 1942:

"I received your letter of the 2nd this morning, I am pleased to hand you contract in duplicate, together with check in the sum of $500 as earnest money and to apply

as part payment for your 24½ acres in Blytheville, and known as the Creamery Package Mfg. Co. land.

"Purchase being $3,100 and in accordance with your letter of December 29th, also our conversation over the phone since that date, at which time it was agreed that you would be willing to accept $1,000 cash and two years for balance with 6% int. and to pay $1,000 each year one and two years.

"Will say that I have had 5 different people to go over this land in the past week, and the party who's offer I submitted you on the 2nd, was for less money than your net price, this was to be all cash, however.

"You will please sign the contract, return me one copy and retain one for your files, also, let me have abstract by early mail.

"Yours very truly,

"/s/ W. M. Burns."

Burns, when he received the check from appellant, placed a call for appellee, A. P. Dacus, who had been attending to all transactions pertaining to the land for himself and his son, appellee, P. M. Dacus, over long distance telephone. He did not succeed in reaching the elder Dacus, but talked to his son and informed him of the trade with Harris. The younger Dacus claimed that he hadn't handled the matter in any way, wasn't familiar with it, and referred Burns to his father. In the meantime, another real estate dealer in Blytheville called the elder Dacus and offered him, on behalf of appellee, Doan, $3,000 cash for the land. Dacus accepted this offer and thereafter executed deed to Doan. When Burns' letter, with appellant's check and signed offer to buy the land reached Dacus, he returned the check and proposal to Burns with a letter stating that he had already sold the land to another party.

On behalf of appellant it is contended that Burns was the agent of appellees, A. P. Dacus and P. M. Dacus, and was authorized to sell the land, that he did in fact sell the land to appellant, and that the letter of Burns to A.

P. Dacus, quoted above, was a memorandum of the contract signed by Burns as agent for the owners of the land.

Appellees argue that Burns was not authorized to sell the land except for cash, that he did not in fact sell the land to appellant, that the letter of Burns was not a sufficient memorandum of the sale to satisfy the statute of frauds and that the alleged memorandum was not delivered to appellant.

By § 6059 of Pope's Digest it is provided: "No action shall be brought . . . to charge any person upon any contract for the sale of lands, tenements or hereditaments, or any interest in or concerning them . . . unless the agreement, promise or contract upon which such action shall be brought, or some memorandum or note thereof, shall be made in writing, and signed by the party to be charged therewith, or signed by some other person by him thereunto properly authorized."

There is a conflict in the authorities as to whether or not the memorandum of the contract of sale of real estate, required by the statute of frauds, must be delivered to the party seeking to enforce the contract. This court, in the early case of *Johnson* v. *Craig,* 21 Ark. 533, held (headnote 1): "Where the power of an agent to sell the land of his principal is limited in time, and he makes an agreement to sell the land, it will not be binding upon his principal, unless he deliver to the purchaser some memorandum in writing of the sale, before the time to which his agency is limited."

The High Court of Errors and Appeals of Mississippi, dealing with this question, in the case of *Johnson* v. *Brook,* 31 Miss. 17, 66 Am. Dec. 547, said: "We have been able to find no case in which a writing signed by a party, and kept in his possession, without delivery to the other party, has been held to be a compliance with the statute . . ."

In the case of *Callanan* v. *Chapin,* 158 Mass. 113, 32 N. E. 941, the Supreme Judicial Court of Massachusetts

said: ''Although the agreement was signed by the parties, yet, as there was no delivery, it never took effect, and cannot be considered a sufficient memorandum, within the statute of frauds.''

The Supreme Court of Tennessee, in the case of *Wilson* v. *Winters,* 108 Tenn. 398, 67 S. W. 800, quoted with approval this extract from the opinion in *Parker* v. *Parker,* 1 Gray (Mass.) 409: ''It was further urged that if the instrument was not valid as a deed, it might be considered as a memorandum in writing, signed by the party agreeing to convey the real estate therein described, and thus authorize a decree in equity to make a conveyance. But in regard to this, the same difficulty exists. As a memorandum in writing stipulating to convey the land, to make it operative, it must have been executed and delivered to the plaintiffs or some one in their behalf.''

In ''Browne on the Statute of Frauds,'' Fifth Ed., § 354, this is said: ''Even when a paper is drawn up as the final obligation, if it be retained by the party signing it, and never in any way delivered as his agreement, it cannot be made use of, even as a memorandum.''

Other cases in which the same rule is laid down are: *Swain* v. *Burnette,* 89 Cal. 564, 26 Pac. 1093; *Steel* v. *Fife,* 48 Ia. 99, 30 Am. Rep. 388; *Mentzer* v. *Hudson Savings Bank,* 197 Mass. 325, 83 N. E. 1102; *Sanborn* v. *Sanborn,* 7 Gray (Mass.) 142; *Dickinson* v. *Wright,* 56 Mich. 42, 22 N. W. 312; *Comer* v. *Baldwin,* 16 Minn. 172; *Poplin* v. *Brown,* 200 Mo. App. 255, 205 S. W. 411; *Brown* v. *Brown,* 33 N. J. Eq. 650; *Montauk Association* v. *Daly,* 32 Misc. R. 588, 67 N. Y. S. 312 (aff. 62 App. Div. 101, 70 N. Y. S. 861); *Grant* v. *Levan,* 4 Pa. 393.

The decision of this court in the case of *Johnson* v. *Craig, supra,* was rendered eighty-five years ago; and, so far as we have been able to discover, has not since been modified or overruled. In the case of *Central Clay Drainage District* v. *Hunter,* 174 Ark. 293, 295 S. W. 19, cited by appellant as impliedly overruling the opinion in *Johnson* v. *Craig, supra,* the statute of frauds was not pleaded

as a defense, although one of the headnotes suggests that such was the case. In that case only the statute of limitations was involved. The opinion in the case of *Johnson* v. *Craig, supra,* is a well reasoned one, and apparently is supported by the weight of authority in other states. We adhere to the rule there announced, and hold that, even if the letter of Burns to Dacus, relied on by appellant as constituting the memorandum of the contract of sale, could be said to be sufficient in its language and terms to satisfy the requirements of the statute of frauds, yet, since this letter was never delivered to appellant, it could not form the basis of a suit by appellant for specific performance.

The decree of the lower court is affirmed.