TRUNDY & *al. versûs* FARRAR.

The authority of an agent to transfer a note by indorsement, may be created verbally, whether the principal be an individual or a corporation.

Such authority may be inferred from facts and circumstances, connected with the transaction.

ASSUMPSIT upon three negotiable notes, given by the defendant to the proprietors of the town of Baileyville, indorsed by "Samuel Kelly, agent."

Whether Kelly had authority so to indorse the notes as to give to the plaintiffs a right to maintain this action upon them, is the only question in the case.

The case as reserved for the consideration of the court is as follows : —

To prove the agency of Samuel Kelly, the plaintiffs offered to show by parol, that he had acted as the agent of the proprietary from 1834, to the present time, giving deeds, indorsing notes, bringing suits, and taking care of the property.

The court ruled this evidence inadmissible for this purpose. Plaintiffs then introduced the records of the proprietors of

Baileyville, showing the organization of the proprietary and the choice of Samuel Kelly agent, and several [votes in relation to his authority from 1834 to 1842. It also appeared in evidence, that said Kelly had acted as the agent of the proprietors of Baileyville from the time of his election to the present time, occasionally indorsing and transferring notes given for lands sold by him as agent of the proprietors, giving deeds and generally transacting their business; that they have had no other agent; that said Kelly had transacted all the business of the corporation; that in 1836, the greater part of the lands, then unsold, was transferred to be held in severalty; that the lots which had been bonded to settlers, and not paid for, were transferred to said Kelly; that all the notes and securities held by the proprietary at that time, were transferred to said Kelly; that since that time, he has been the principal owner of the lands of the proprietary; that in selling out in 1836, all the lots which had been bonded to settlers, with some lots held by Kelly, two lots by J. Granger, and some others, were reserved.

It also appeared, that Reuben Lowell was chosen treasurer of the corporation in 1834, but it did not appear, that he accepted the office, or ever acted as treasurer; nor did it appear, that any other person was ever chosen, or ever acted as treasurer.

It further appeared in evidence, that the notes sued in this action, were three of five notes given for a lot of land, bought by defendant of the proprietors of Baileyville, and, that the other two notes were indorsed, one by " Samuel Kelly" the other " Samuel Kelly, agent," and sued in the name of Henry Clark of Boston, in a suit which was defaulted.

George M. Chase, called by defendant, testified, that in 1836, the lands of the proprietary in Baileyville, excepting the lots bonded to settlers and certain other reserved lots, two to J. Granger and some to S. Kelly, were transferred to himself and George J. Galvin; that while they held the lands he cut some cedars by permit from Galvin; that the proprietors never got any settlement with Kelly as agent; that some of

Trundy *v.* Farrar.

the proprietors did cut some timber from the land in off-set to the timber that Kelly cut; that no other agent was ever chosen, had no recollection of Kelly's having been forbidden to act as agent. It appeared, that the notes in suit in this case were claimed as the property of Samuel Kelly, by him, when they were transferred to the plaintiff.

The presiding Judge ruled, that this evidence was insufficient to show any authority in Kelly, the agent, to indorse the notes so as to transfer the interest of the payees in them to the plaintiff.

If, in the opinion of the whole court, the aforesaid rulings were correct, and the evidence insufficient to maintain the action, the plaintiff is to be nonsuit; otherwise a new trial is to be granted.

*J. Granger*, for plaintiff.

*Fuller*, for defendant.

TENNEY, J. — "A general agency exists, where there is a delegation to do all acts connected with the particular business or employment." Story's Agency, sect. 17. "The principal will be bound by the acts of his agent, within the scope of the general authority conferred on him." *Ibid.* sect. 126.

The authority of an agent may be created verbally, without writing, excepting for some special acts; and may be inferred from the relation of the parties, and the nature of the employment, without proof of any express appointment. It is sufficient if there be satisfactory evidence of the fact, that the principal employed the agent, and that the agent undertook the trust. The agency must be antecedently given, or be subsequently adopted. 2 Kent's Com. Lect. 41, p. 477 and 478.

It is very usual to prove the agency by inference from the habits and course of dealing between the parties. These may be such as to show that there was an appointment sufficiently broad to cover the acts done by the agent, or that there has been a continued ratification thereof; the principal would be

bound by either. "Having himself recognized another as his agent, by adopting and ratifying his acts, done in that capacity, the principal is not permitted to deny the relation to the injury of third persons." 2 Greenl. Ev. sect. 65; Story on Agency, sect. 56 and sect. 127." When an agency actually exists, the mere acquiescence may well give rise to the presumption of an intentional ratification of the act. *Ibid*, sect. 256.

On the question, whether a person is an agent of a corporation or not, the same presumptions are applicable to such bodies, as to individuals; and that a deed, or a vote or by-law is not necessary to establish a contract, promise or agency. *Maine Stage Co. v. Longley*, 14 Maine, 444; 2 Greenl. Ev. sect. 62. "In America the general doctrine is now firmly established, that whenever a corporation is acting within the scope of the legitimate purposes of its institution, all parol contracts made with its authorized agents, are express contracts of the corporation." Story's Agency, sect. 53. "In all matters of daily necessity within the ordinary powers of the officers of a corporation aggregate, or touching its ordinary operations, the authority of its agents may be proved, as in the case of private persons." 2 Greenl. Ev. sect. 62.

The notes in suit were given by the defendant to the proprietors of Baileyville, for a lot of land, which he purchased of them, and indorsed by Samuel Kelly as agent. The questions presented are, whether there was sufficient evidence from the vote of the proprietors, of authority in Kelly to negotiate the notes in their behalf; and whether there was evidence before the jury, upon which they should have passed in relation to the existence of the agency, arising from the conduct of the proprietors.

The vote passed June 9, 1834, was introduced as evidence by the plaintiff, without objection, and is in these words; "Voted, that the agent be and is authorized to bargain and sell any of the lands of the proprietors, to attend to the disposing of the grass thereon, and the working out of the proprietor's taxes, and to attend to such other business as may

Trundy *v.* Farrar.

concern the general interest." This vote is very comprehensive. The terms used, in the vote of an organized proprietary, would authorize the transfer of their lands by their agent. The right to bargain and sell them involves the power to receive the consideration. The authority to attend to such other business as may concern the general interest, will embrace the power to receive notes, for the consideration and payment of the same ; and if it was found more for the interest of the proprietors to negotiate those notes, than to obtain the sums secured thereby, by directly calling upon the makers, it would not exceed the limits of the agency.

It was shown by the records, that Samuel Kelly was chosen agent in the year 1834, and that he had acted as such from that time, to the time of the trial of the action, indorsing and transferring notes, given for lands, sold by him as their agent, giving deeds and generally transacting their business, and all their business, they having no other agent ; that in the year 1836 the greater part of their lands, then unsold, was transferred, to be held in severalty ; and that the notes and securities held at that time, were transferred to him. The proprietors having elected Kelly as their agent, for some purpose, these acts of his, it may fairly be inferred, were known to them, and were acquiesced in. A jury might be authorized to make the inference, that as he took notes as the consideration of deeds given by him of the proprietors' lands, and transferred notes given therefor ; and as the notes and securities held by the proprietors were transferred by the proprietors themselves, he was their general agent, and clothed with the power to do that, which had for so long a time been done without any objection, made by them. The acquiescence of the proprietors in these acts, many of which must have been generally known, during the time, he acted as their sole agent, and they had meetings and passed votes in relation to his authority, was evidence that they had authorized him to transact their business in the manner in which he did it, and that he was possessed of full power to perform all the duties of their general agent.

The objection to Kelly's authority to transfer the notes in suit, does not come from the proprietors, but from the defendant, who dealt with them through their agent, Kelly. He received the value of the notes, and is bound to pay the amount to some one. The facts in proof are such as would induce the plaintiff to conclude, that Kelly was the agent; or was held out to the world as such, and if so, good faith requires, that the proprietary should be bound by his acts. This would effectually protect the plaintiff from loss, and would equally secure the defendant from all exposure to pay his notes a second time. We think, independent of the vote of the proprietors, there was evidence of the agency of Kelly, which might with propriety be submitted to a jury.

*According to the agreement of the parties,*

*the action is to stand for trial.*