[No. 6754. Decided October 8, 1907.]

ISABELLE R. STEELE *et al.*, *Appellants*, v. JAY LAWYER *et al.*,
Respondents, W. H. KIERNAN, *Defendant.*[1]

BROKERS—EMPLOYMENT—PRINCIPAL AND AGENT—RELATIONSHIP—
EVIDENCE—SUFFICIENCY. Brokers are not shown to be the agents of
the owners, although they accepted a commission, where it appears
from the correspondence between them that the brokers, claiming
to have a client desiring the property, first sought employment, and
then an option, that the owners refused employment to them as
agents on a commission basis, and refused them an option, but
fixed their own price "net," and after much correspondence offers
were made direct and accepted, which precluded any legal claim for
a commission, although the owners did pay a commission and may
not have been informed that the brokers were interested in the pur-
chase, the brokers not having demanded the commission, and the
parties having dealt at arm's length.

Appeal from a judgment of the superior court for Spokane
county, Kennan, J., entered December 7, 1906, upon findings
in favor of the defendants, after a trial on the merits before
the court without a jury, in an action to rescind a sale of
real property, and for an accounting. Affirmed.

*Danson & Williams*, and *Fred H. Moore*, for appellants.
*Graves, Kizer & Graves*, for respondents.

RUDKIN, J.—Some years ago the plaintiffs, who are resi-
dents of the state of Maryland, acquired by mortgage fore-
closure a large tract of wild unplatted land in the northern
part of the city of Spokane. The land thus acquired was
rough and gravelly, covered with a growth of scrub pine,
and fit only for townsite purposes. In the month of Febru-
ary, 1905, this land was sold to the defendant Lawyer Land
Company. At the time of the sale, the streets in the vicinity
of the land were ungraded, and the land itself was without
water, light or street car service. Immediately after the sale

[1]Reported in 91 Pac. 958.

the land was platted into lots and blocks, the streets graded, a water supply secured, and light and street car facilities obtained, at a considerable cost to the purchaser. The lots were extensively advertised, and at the time of the commencement of this action, some eighteen months after the sale, the greater part of the property had been sold, and the purchaser was in a fair way to make a good profit on its investment. The present action was brought to rescind the sale above referred to, to recover the property unsold, and for an accounting of all sums received on account of sales made. This relief was sought upon the sole ground that the defendants Lawyer and Dalke, partners as the Western Trust & Investment Company, were the agents of the plaintiffs in negotiating the sale to the defendant Lawyer Land Company, and were also interested in the purchase as stockholders in the purchasing company, which latter fact was unknown to the plaintiffs at the time of the sale, or until a few days prior to the commencement of the action. The court below denied the relief prayed for, and the plaintiffs have appealed.

If the relation of principal and agent did not exist between the appellants and the respondent Western Trust & Investment Company, at or prior to the time of the sale which the appellants are now attempting to rescind, the judgment must of necessity be affirmed; and we will first address ourselves to a consideration of that question. If such relationship existed, it was created by or resulted from the written correspondence between the parties, as they never met or had other or further dealings. The negotiations leading up to the sale were conducted by the appellant Margaret A. Steele on the part of the appellants, and largely by the respondent Lawyer on the part of the Western Trust & Investment Company; but for convenience we will hereafter refer to the parties to the correspondence as the appellants and the Western Trust & Investment Company.

The first communication between the parties was the fol-

lowing letter from the Western Trust & Investment Company under date of September 30, 1903: .

"We note that you are paying taxes on N. E. $\frac{1}{4}$ of S. E. $\frac{1}{4}$ of Sec. 6 T 25 R 43, . . . We have a party that desires to purchase 5 or 10 acres in that vicinity and hence we write you to ascertain your best cash price. . . . P. S. Make price including a 5 per cent. com."

The answer of appellants under date of October 6th was as follows:

"In reply to your letter of inquiry of the 30th ultimo I will say that it is not our desire to sell off the best part of our land . . . in such small parcels but we are offering the whole of the east forty in one lot. Messrs. H. Bolster & Co. of your city have the matter in charge at present and will be glad to answer inquiries."

Under date of May 12, 1904, the appellants wrote:

"Last October I received a letter of inquiry from your firm in regard to some land my sister and I own north of Spokane. At that time a client of yours wished to buy 5 or 10 acres. . . . I write to say that the land is now for sale but not in quite such small portions as you asked for last year. . . . If at present you have a client wanting such land I shall be glad to hear from you."

This letter was answered under date of September 26th as follows:

"On May 12th, you wrote us regarding the N. $\frac{1}{2}$ of the S. $\frac{1}{2}$ of Sec. 6. . . . We have been doing some work on this proposition and now have a party interested in the proposition and think we can make a sale. Before going more fully into the matter with our client we would like to have a letter from you giving us the exclusive sale for, say sixty days, and stating that a commission of 5 per cent. will be allowed us for making the sale. If you will give this matter your prompt attention we have every reason to believe that we can make the deal for you in a very short time."

On October 1st the appellants replied as follows:

"Your letter of the 26th ultimo is at hand, and in reply say that I have already sold the east 40 acres of the tract to which you refer . . . and have given an option on

the remainder. If the present option should fail of results, and if another party who seems anxious to buy in case the remainder of the land is again on the market, should fail to purchase, I will let you know."

On November 23d the Western Trust & Investment Company again wrote:

"You wrote us on Oct. 1st that you would soon know whether or not you would be in a position to place vacant property north of the city in Sec. '6-25-43. We have a party whom we think we could interest providing we could get an option."

The above was answered by the appellants under date of November 30th, as follows:

"In reply to your letter of the 23d inst. I will say that 110 acres of our land in section 6 remain on the market. The price is $245 per acre. . . . I am not in a position to give an option to anyone now and do not expect to give one at all unless it be for a very short time to close a deal that has been previously arranged. If you can do anything for me on these terms I shall be glad to hear from you. . . . The price I now quoted ($245 per acre) is for all cash or half cash and the rest first mortgage on the land."

On December 5th the Western Trust & Investment Company again wrote:

"In reply to yours of the third [should be thirtieth] ult. will say that we have parties who will buy your 110 acres in Sec. 6 provided you will make some small concessions from terms as stated in your letter. You offered us the entire 150 acres in May last at $200 per acre; since then you have sold the best 40 acres and now ask $245 for the remainder. This is more of an advance than conditions will warrant but to cut it short our people will pay you $25,000 net for the property but will require a little time to get the money together. . . . We can assure you that is a very liberal offer for the property and feel sure that you can not do better. . ."

To which the appellants replied under date of December 12th:

" . . . The figures I have given you are the best we can do on the land. In regard to the sixty days for pay-

ment, we could not give so much unless a considerable sum was paid down as an evidence of good faith. Otherwise your proposition would amount to option of sixty days, which we are not prepared to give. I shall be glad to hear further from you if your clients can agree to our terms."

On December 28th the Western Trust & Investment Company wired:

"Will you give us to Jany twentieth to close land deal at your price? Wire answer."

On December 30th the appellants answered by wire:

"I will give until Jany twentieth to close deal."

The following day the appellants wrote:

"If you have prospect of completing your deal by the time set, January 20th, the deed should be placed in escrow without delay. If you will send me a blank form for deed immediately on receipt of this and will tell me in whose name to draw it, . . . I presume that you intend to pay the whole in cash."

This letter was answered by the Western Trust & Investment Company under date of January 6, 1905, as follows:

"In reply to yours of Dec. 31st will say that we will have the money in the bank to close deal on or before the 20th but cannot yet advise you how to make the deed for the reason that our clients have not yet decided whether they will hold title to the property as a corporation or have it deeded to some one person. . . . There is no doubt about our people taking the property. . . ."

On January the 13th the appellants wrote:

"Yours of the 6th inst. at hand. I have just written Messrs. Crow & Williams giving them directions about drawing of the mortgage in case you make half payment in that way. . . Your clients will soon have to make up their minds on the points you mentioned if they want the deed in bank by the 20th instant."

On January 20th the Western Trust & Investment Company applied for an extension of time in the following letter:

"We regret very much to have to inform you that we have not been able to close deal on your land. We have put in a lot of hard work on this proposition and have $13,000 on hand to put into the deal but other parties interested have been slow in reaching a decision and in getting their money. However we feel certain that if we have a little more time we can close the deal for cash. Our Mr. Lawyer has just had a full discussion of the matter with Messrs. Crow & Williams and they are writing to you today. We trust that you will understand our position and give us an extension of two or three weeks. . . . Upon receipt of this letter please wire at our expense the best you are willing to do for us and unless there is some good reason for your not doing so we trust you will grant us the full three weeks, we will in turn guarantee to do our best to close the sale in that time and hope to do it before."

This was accompanied by a letter from the appellants' attorneys recommending the extension, if it did not interfere with other plans. On January 26th the appellants granted the extension by the following telegram:

"Extend option three weeks from January twentieth. Afterward higher price."

On February 6th a deed was forwarded to the appellants for execution by their attorneys, with the name of the grantee in blank, the attorneys informing them in the letter of transmittal that the grantee was a corporation to be formed for the purpose of handling the property. A postscript was later added to the letter saying that the name of the grantee corporation was Lawyer Land Co., and that the name had been inserted in the deed. On February 7 the Western Trust & Investment Company wired:

"Have closed deal. Williams sending deed to you today."

And the next day wrote as follows:

"We are pleased to inform you that we have at last concluded arrangements for the purchase of your property, and deed was forwarded to you yesterday by Mr. Williams of

Crow & Williams. We hand you herewith the opinion of our attorney on the title, which shows the taxes for 1904 unpaid; also some old city taxes, both of which you can arrange to have paid out of the purchase price. Also in your instructions to the bank please mention that the cost of the abstract, $18, is to be allowed. . . ."

The remainder of the letter relates to a deficiency in the acreage and is not material. This letter and telegram the appellants answered under date of February 14, as follows:

"Your letter of the 8th inst. enclosing the opinion of your attorneys reached me this morning. Last night I received a letter from Mr. Williams enclosing the deed for our signatures. You doubtless remember that when I offered you the land at $245 per acre the year was still 1904 and so the taxes were not due. They will not become delinquent, as you are aware, until the 31st of May next. . . In offering the land to you I figured 110 acres at $245—or $26,950 as you have stated in the deed, allowing you 5 per cent. commission and no deductions except the amount of the abstract. If you are willing to give this amount the deed will be forwarded to the Traders National Bank. If you do not wish to pay so much there is no compulsion upon you to take it. I am willing to risk holding it for a higher price. . . ."

The instructions to the appellants' bankers relating to the delivery of the deed were as follows:

"The enclosed deed is to be delivered to Mr. Jay Lawyer of the Western Trust & Investment Co. Jamison Blk, Spokane, on the following conditions:

"He is to pay $26,950 (as mentioned in deed) less 5 per cent. commission and less also $18 for abstract. That is he is to pay a net sum of $25,584.50. Besides he is to show you tax receipts for 1904 taxes. . . . Mr. Lawyer understood that this is the condition, we having refused to reduce our purchase price by these amounts. . . ."

Other brief communications between the parties have no bearing on the question under consideration. Did the foregoing correspondence create an agency between the appellants and the Western Trust & Investment Company? It

may be that the application to extend the time for consummating the sale was made in bad faith, to permit the lien for 1904 taxes to attach; the Western Trust & Investment Company may have accepted and retained a commission they were not entitled to either as a matter of contract or as a matter of law, and the subsequent attempt to recover back a part of the purchase price on account of a deficiency in the acreage may have been unwarranted, but the question here is one of agency, not of honesty or fair dealing.

In the first letters that passed between the parties the Western Trust & Investment Company undoubtedly sought employment as agents for the appellants, and expressly referred to their commission of 5 per cent, but they never were appointed or recognized as agents, and on October 1st, 1904, were informed that forty acres of the land had already been sold, and that an option had been given for the remainder. The negotiations which culminated in the sale to the Lawyer Land Company commenced with the letter of November 23, 1904, wherein the Western Trust & Investment Company wrote that they had a party in view whom they thought they could interest in the property, "Providing we could get an option." Whether the option was to run to the Western Trust & Investment Company or to the intending purchaser is a matter open to conjecture. The appellants replied to this, fixing their price at $245 per acre, refusing the option, and adding, "If you can do anything for me on these terms I shall be glad to hear from you." This expression, and the subsequent acceptance of a commission by the Western Trust & Investment Company are the only facts or circumstances in the record tending in the remotest way to substantiate the claim of agency. The matter of the commission we will refer to later. In their letter of December 5, the Western Trust & Investment Company said: "To cut it short our people will pay you $25,000 net for the property." This offer would seem to preclude a claim for commission or a claim of agency,

18—47 WASH.

and the reply of the appellants that $245 per acre already fixed was the best they could do, should also be construed as a net offer. In fact the entire correspondence shows that the appellants and the Western Trust & Investment Company were dealing at arm's length, and that the latter represented the purchaser, if anybody. Thus, in their letter of February 14, 1905, the appellants say to the respondent Lawyer: "If you do not wish to pay so much there is no compulsion upon you to take it. We are willing to risk holding it for a higher price." In their letter to their bankers they say, "The enclosed deed is to be delivered to Mr. Jay Lawyer of the Western Trust & Investment Company, Jamison Blk., Spokane, on the following conditions: He is to pay $26,950 (as mentioned in deed) less 5 per cent commission and less also $18 for abstract. That he is to pay a net sum of $25,584.50. Besides he is to show you tax receipt for 1904 taxes. Mr. Lawyer understood that this is the condition, we having refused to reduce our purchase price by these amounts."

Now as to the acceptance of the commission on the sale by the Western Trust & Investment Company. In the first place, they were clearly not entitled to a commission as a matter of law, because of their interest in the purchase. In the second place, in our opinion they were not entitled to a commission as a matter of contract; and while their subsequent conduct in accepting a commission is in a measure inconsistent with their statement that they expected none, yet we think that statement is fully borne out by the testimony. In their letter transmitting the opinion of their attorney on the abstract they referred to the taxes of 1904, the old city taxes, the cost of the abstract, and the claim on account of a deficiency in acreage, but made no reference to a commission and no provision whatever was made for its payment. From all the circumstances therefore we are constrained to hold that the Western Trust & Investment Company were not entitled to a commission as a matter of law or contract and expected none.

Its subsequent acceptance is a circumstance against them; but an agency existed or did not exist pending the negotiations for the sale, and could neither be created nor abrogated by what subsequently transpired.

"Agency is a legal relation, founded upon the express or implied contract of the parties, or created by law, by virtue of which one party—the agent—is employed and authorized to represent and act for the other—the principal—in business dealings with third persons. The distinguishing features of the agent are his representative character and his derivative authority." Mechem, Agency, § 1.

We fail to see a single element of such relationship in the record before us. The Western Trust & Investment Company may not have informed the appellants in so many words that they were interested in the purchase, and the appellants may not have known of such interest to a moral certainty; but their suspicions were aroused, and they made no inquiry, for the all sufficient reason that at that time they did not care. The appellants concede that loose expressions in the correspondence militate against their present claims, and we can find nothing but loose expressions in their favor. Ordinarily a court of equity will not seize upon mere loose expressions for the sole purpose of enabling parties to reap where they have not sown.

There is no error in the record, and the judgment is affirmed.

HADLEY, C. J., FULLERTON, DUNBAR, and ROOT, JJ., concur.

CROW, J., took no part.