[Crim. No. 711. Second Appellate District, Division One.—May 17, 1920.]

In the Matter of the Proceedings for the Disbarment of VERNON CRUICKSHANK, an Attorney and Counselor at Law.

[1] Attorney at Law—Disbarment Proceedings—Conflicting Evidence—Appeal.—In a proceeding for the disbarment of an attorney at law, as in other cases, a court of review cannot determine the weight to be given conflicting evidence, but such determination is the peculiar and exclusive province of the tribunal wherein the hearing is had.

[2] ID.—MISAPPROPRIATION OF MONEY—PROOF REQUIRED.—Section 1110 of the Penal Code, which specifies the character of proof required in order to convict one of false pretenses, is not applicable in a proceeding for the disbarment of an attorney at law based on the misappropriation of money intrusted to him.

[3] ID.—EXISTENCE OF PARTNERSHIP—ABSENCE OF DEFENSE.—The fact that a partnership existed between them would not constitute a defense to a proceeding brought against an attorney at law to have him disbarred for acts constituting moral turpitude in defrauding or misappropriating the money of his partner.

[4] NEW TRIAL—NEWLY DISCOVERED EVIDENCE—DENIAL OF CONTINUANCE.—A motion for a new trial on the grounds of newly discovered evidence and of error of the court refusing to granting a continuance that certain evidence might be secured is properly denied, where application for such continuance was not made during the trial of the case and no facts are stated in the affidavit in support of such motion showing the discovery of any new evidence which was not known and accessible to defendant at the time of the trial.

[5] ID.—INEFFICIENCY OF COUNSEL—OMISSION TO PROTECT DEFENDANT'S RIGHTS.—In the absence of a duly authenticated record showing error, the appellate court cannot reverse an order denying a motion for a new trial on the ground that, due to the inefficiency of counsel, defendant omitted the doing of things which he thereafter felt he should have done in protecting his interest at the trial.

[6] APPEAL — JUDGMENT — REASONS FOR DECISION — RECORD.—Reasons stated by a judge in deciding a case are no part of the judgment and have no place in the record, and, therefore, present nothing to be considered in reviewing a judgment on appeal therefrom.

APPEAL from a judgment of the Superior Court of Los Angeles County. Chas. Monroe, Judge. Affirmed.

The facts are stated in the opinion of the court.

Henry G. Bodkin for Appellant.

Frank F. Oster for Respondent.

SHAW, J.—The trial of defendant, an attorney at law, upon an accusation filed by the Los Angeles Bar Association charging him with the commission of acts involving moral turpitude, resulted in a judgment of disbarment, from which, and an order overruling his motion for a new trial, he appeals.

47 Cal. App.—32

The gist of the accusation is that appellant obtained from Henry Goetz the sum of ten thousand dollars upon the representation that the same would not be used otherwise than in the construction and equipment of a certain plant and patented process for extracting ore from the black sands of certain lands located near Watsonville, California, wherein he and one J. R. Ghiselin owned a controlling interest; that instead of using the money for such purpose, he divided the same between himself and Ghiselin, both of whom appropriated the money to their own uses. That such was the theory adopted by the trial court conclusively appears from this statement made in the course of the trial, wherein the judge said: "The only issue is what this money was going to be used for. All they claim is that they said the money was not used for what Mr. Cruickshank said it was going to be used. . . . That is all I am going to try. . . . The question is whether he [Cruickshank] represented that it would be used for a certain purpose and did not use it for that purpose. That is all there is, and that is all the complaint states."

While the evidence is to some extent conflicting, that of Goetz, which the court accepted as true, tends to show the following facts: That he and appellant had for many years been intimately acquainted and the latter had from time to time acted as his attorney in certain matters. In September, 1917, he, at the request of appellant, called at the latter's office, when appellant told him he had a proposition that was going to make lots of money; that he, with Ghiselin, was interested to the extent of seventy per cent in a patented process to separate iron ore from black sand upon which they had an option, and needed ten thousand dollars toward putting up the plant. Goetz said he did not want to gamble, but could let him have the money, provided his banker approved, to which Mr. Ghiselin, who was present, replied: "We are not going to give our secrets away." Whereupon Goetz said: "That lets me out," to which a Mrs. Thorkildsen, who was present, replied: "Well, all right, I will put up the money." Thereupon Goetz left the office, followed by appellant, who expressed his friendship for the former and the fact that there were tremendous profits in the proposition, and that, notwithstanding Mrs. Thorkildsen was going to put up ten thousand dollars, which

he thought sufficient for the purpose, nevertheless they should have the additional money on hand for use as an emergency fund, since other money might be needed to complete the plant and its equipment; and hence it was desired that they be prepared with money for such purpose, and that if the money so advanced by Mrs. Thorkildsen was insufficient for the purpose, then and only in such case would his money be used therefor. Meanwhile he was assured the money was to be deposited and kept in bank. Goetz visited the property in company with appellant and Ghiselin, at which time he was cautioned by appellant and Ghiselin not to talk about the business in the presence of others, and by their acts and representations he was favorably impressed with the merits of the proposition. Upon returning to Los Angeles Goetz was shown certain photographs of the proposed plant, tending to convince him that the plant could be erected for the money obtained from Mrs. Thorkildsen, and on September 21, 1917, when Goetz gave the check, appellant, in his office, said to him: "Henry, we don't really need your money. I have money in the safe, ten thousand dollars, but I will not use that money [represented by the Goetz check] for any other purpose than what it is intended for." Whereupon Ghiselin got up and pulled out the drawer in the safe and showed him the money. In delivering the check, Goetz said to appellant that he did not want Ghiselin to have anything to do with it, and stated: "Now, Vernon, here is my check, hoping and trusting that everything you told me is nothing but the truth." He had full confidence in the appellant and advanced the money to him, believing that it would be kept in the bank at Watsonville and only used in case the money obtained from Mrs. Thorkildsen was insufficient to erect the plant, in which case the money so advanced would be used toward such purpose; otherwise returned to him. Goetz obtained the money by borrowing it from his bank, appellant agreeing to reimburse him for such rate of interest as he was compelled to pay therefor, and voluntarily, it seems, proposed giving him a contract for a five per cent interest in that of appellant and Ghiselin, similar to one which appellant said they were giving to Mrs. Thorkildsen. This receipt recited that Goetz had loaned them ten thousand dollars, in consideration of which they conveyed to

him a five per cent interest in the option therein described and in certain alleged patent rights in the machine to separate iron and steel from the black sands therein mentioned. No part of the money so advanced went into the construction of any plant or process, but upon receiving it appellant gave one-half thereof to Ghiselin, and the former used a part of his share in a trip to New York, made for the purpose, as claimed by him, of financing the black-sand proposition. There is much other evidence touching the question, but that referred to tends to show that appellant and Ghiselin engaged in a dishonest scheme to obtain the ten thousand dollars from Goetz and did not intend to use it toward the completion of the proposed plant, but did at the time intend to appropriate it to their own use, and thus by deceiving Goetz he was fraudulently induced to advance the money, no part of which, other than one thousand six hundred dollars, did he collect.

[1] Appellant insists that a proceeding for disbarment is criminal in character, and therefore the proof, as in the trial of a criminal case, must show the defendant to be guilty as charged beyond a reasonable doubt, and insists that, notwithstanding the testimony of Goetz, it does not, when considered with testimony offered by defendant, establish a case justifying his disbarment, in support of which he cites a number of authorities from other jurisdictions. What was said by the supreme court, in answering a like contention (*In re Morton,* 179 Cal. 510, [177 Pac. 453]), is appropriate here: "Basing his contention upon the fact that a proceeding for the disbarment of an attorney is in the nature of a criminal proceeding (*In re Alameda County Bar Assn.,* 35 Cal. App. 534, [170 Pac. 432]), counsel insists that, to warrant disbarment, the evidence, like that required to justify a verdict of guilty in a criminal case, must be clear, positive, and such as to establish both the motive and commission of the act charged beyond a reasonable doubt. In support of this proposition he cites a number of authorities from other jurisdictions, an examination of which, however, shows that none of them involved cases on appeal where the court was called upon to review the sufficiency of the evidence in support of the finding, but what was said therein related to proceedings of disbarment over which the court, in some of the cases having recourse

to a referee in the taking of the evidence, assumed original jurisdiction, acting as a trial court, as *In re Houghton,* 67 Cal. 511, [8 Pac. 52]. None of them constitute authority for appellant's claim, when applied to a court charged with the duty of reviewing the testimony, but do announce the rule that in such cases the accused should not be convicted unless the trial court is convinced, by clear and satisfactory evidence, or, as said in some cases, beyond a reasonable doubt, of his guilt. However this may be, this court, in a like case involving a like question (*Matter of Danford,* 157 Cal. 425, [108 Pac. 322]), has, in effect, held that in disbarment proceedings, as in other cases, a court of review cannot determine the weight to be given conflicting evidence, but that such determination is the peculiar and exclusive province of the tribunal wherein the hearing is had." Hence, since the trial court in the exercise of its function believed the testimony of Goetz, and, though conceding its denial on the part of defendant, we cannot say the evidence was insufficient to justify the implied finding of the court that defendant was guilty of acts constituting moral turpitude, which is anything done contrary to justice or honesty and with the purpose of defrauding another, regardless of whether such acts rise to the dignity of a crime. (*In re Disbarment of Coffey,* 123 Cal. 522, [56 Pac. 448]; *In re Kirby,* 10 S. D. 322, [39 L. R. A. 856, 73 N. W. 92].) On the contrary, we hold appellant's contention in this regard to be without merit.

[2] "Neither is there any merit in the contention that section 1110 of the Penal Code, which specifies the character of proof required in order to convict one of false pretenses, is applicable to a case of this character.

Another argument made by appellant is that there existed between appellant, Goetz, and Ghiselin the relationship of copartners. This is based upon the fact that appellant and Ghiselin conveyed to Goetz five per cent interest in their option. We are unable to perceive any merit in the contention. [3] But conceding the existence of the copartnership, such fact would not constitute any defense to a proceeding brought against an attorney for acts constituting moral turpitude in defrauding his partner.

[4] In support of a motion for a new trial made by defendant, he filed an affidavit wherein it is alleged that the

court abused its discretion in (a) denying a few minutes continuance of the case to allow appellant to secure the evidence of the president of the Bar Association as to the alleged fact that Goetz had exonerated appellant from any misconduct; (b) that an affidavit by complainant exonerating appellant was in the possession of the secretary of the Bar Association; (c) that after the alleged misconduct of appellant he acted as attorney for Goetz; (d) that prior to the disbarment proceeding Goetz sued appellant and Ghiselin and in his complaint and testimony offered at the trial made statements inconsistent with his testimony given in this proceeding; (e) that the disbarment citation was returnable October 9, 1918, and the case was tried October 15, 1918, over the objection of appellant, during which time appellant's counsel was sick and appellant unskilled in the trial of a lawsuit and therefore unable to present a proper defense. As to all of these and other like contentions, a sufficient answer thereto is that the record discloses no such applications made during the trial of the case, and no facts are stated in the affidavit showing the discovery of any new evidence which was not known and accessible to the defendant at the time of the trial. [5] There is nothing in the record showing that defendant, when the case was set down for trial, made any objection thereto upon the ground that the time was too short for him to prepare his defense, or that he asked for continuance in order to produce the evidence of the president of the Bar Association. On the contrary, the effect of the affidavit is to merely show that defendant omitted the doing of things which he thereafter felt that he should have done in protecting his interest at the trial. It may be, as suggested by appellant, that such omissions were due to the inefficiency of counsel then appearing for him; but the court cannot, in the absence of a duly authenticated record showing error, reverse an order upon such ground.

At the close of the trial the court in rendering its judgment, said: "I realize the seriousness of disbarring an attorney, but the accused is not doing a very substantial amount of law practice, according to his own statements, and there would not be much damage done by disbarring him." [6] It has been repeatedly held that the reasons stated by a judge in deciding a case are no part of the judg-

ment and have no place in the record, and hence present nothing to be considered in reviewing a judgment on appeal therefrom. However, we may say that in arriving at its decision we cannot believe the trial court was in the slightest degree influenced by the limited extent of defendant's law practice.

The judgment is affirmed.

Conrey, P. J., and James, J., concurred.