Kurtz *v.* Farrington.

the Act itself, or allowed it to remain with the common council under a previous grant. We can find nothing of that character in either place, and it results that the ordinance of July 6th, 1925, must be held invalid and of no effect, so far at least as it relates to the salaries of the assessor and his assistant, the plaintiffs in these actions.

To the five questions propounded to us in each case, we answer the first and second, "Yes"; the third and fourth, "No"; and the fifth, for the plaintiff Connelly $937.50, and for the plaintiff Gill $437.50, being one and one-half months at $7,500 and $3,500 per annum, respectively.

In this opinion the other judges concurred.

———————

ANNA J. KURTZ *vs.* DANIEL T. FARRINGTON.

Third Judicial District, New Haven, January Term, 1926.

WHEELER, C. J., CURTIS, KEELER, MALTBIE and HAINES, Js.

If the trial court finds the issues generally for the plaintiff, but assesses his damages under, and renders judgment upon, only one of the counts in the complaint, that count alone will be considered upon the defendant's appeal to this court, where it is apparent that the general finding for the plaintiff has not operated to the prejudice of the defendant.

Proof that a witness has been convicted of crime is not admissible under § 5705 of the General Statutes to affect his credibility, unless the crime is an infamous one.

In this State crimes whose punishment must be imprisonment in the State prison are regarded as necessarily infamous, also those crimes which may be punished by such imprisonment when the nature of the particular crime involves moral turpitude; and crimes whose penalty must be imprisonment in the county jail will be regarded as infamous when the nature of the offense involves moral turpitude and the term of imprisonment may be six months or more.

A first offense against the National Prohibition Act is punishable only by fine and, therefore, is not an infamous crime within the meaning of § 5705.

Kurtz *v.* Farrington.

Moral turpitude, in its legal sense, cannot be defined with precision, since it varies with the changing standards of society, but it may in a general way be said to involve any act of inherent baseness in the private, social, or public duties which a person owes to his fellowmen or to society or to his country, her institutions and her government.

To support, protect and obey the Constitution of the United States is the highest civic duty of every citizen, and one who threatens its integrity by violating the National or State enforcement laws passed in aid of the Eighteenth Amendment is guilty of an act which necessarily involves moral turpitude.

Agency is usually established by contract, express or implied, but not necessarily so, for it may exist where one or more of the essential elements of the contractual relation, such as consideration, is lacking.

When one person by that which he says or does or refrains from saying or doing, intentionally causes or permits another to believe a thing to be true, and to act upon such belief otherwise than but for that belief he would have acted, he is thereafter estopped to deny its truth.

A real-estate broker who represents to his principal that a certain price is the lowest at which it can be purchased from the owner, concealing the fact that he has already made a personal bargain with the owner for the purchase of the property at a lower price, and thus obtains the higher figure from his principal, is liable to the principal for the difference.

The plaintiff communicated to the defendant, a real-estate broker, her desire to purchase property owned by S, and the defendant, without disclosing to the plaintiff that he had already commenced negotiations to buy it for himself, assured her that he would investigate the matter for her. Thenceforth the defendant assumed to act in every respect as the plaintiff's agent and she relied upon him solely to represent her interests, although there was no express agreement to that effect nor any understanding as to a commission; and, having obtained a conveyance from S for $29,000, he fraudulently represented to the plaintiff that he would be obliged to pay $31,000 to obtain the property for her and so received from her the latter sum. The trial court rendered judgment for the plaintiff for $2,000 plus interest. *Held* that the trial court did not err, since the subordinate facts supported the conclusion that the defendant not only occupied a fiduciary relation toward the plaintiff, but that he was her agent by contract; and that, in any event, he was estopped by his conduct to deny the existence of such a relation.

Argued January 26th—decided March 8th, 1926.

ACTION against a real-estate broker to recover damages for alleged fraudulent representations concerning the price and boundaries of certain property purchased by the plaintiff, brought to the Superior Court in New Haven County and tried to the court, *Hinman, J.;* judgment for the plaintiff for $2,192, and appeal by the defendant. *No error.*

*William W. Gager,* with whom was *Timothy S. Sullivan,* and, on the brief, *Edward B. Reiley,* for the appellant (defendant).

*Nathaniel R. Bronson* and *Richardson Bronson,* for the appellee (plaintiff).

HAINES, J.  This action was brought on two counts. While the court found the issues for the plaintiff, it is obvious that the damages were assessed on the first count only, for the proof of the allegations of the first count entitled the plaintiff to recover $2,000 damages, plus $192 of interest, which sums comprise the exact amount of the judgment.  Since the judgment was rendered on the first count alone, and the defendant has not been prejudiced by the general finding of the trial court upon both counts, we shall confine our consideration of this appeal to the first count only.

That count alleges, in substance, that in October, 1923, the plaintiff entered into negotiations with the defendant for the purchase of certain real estate in Waterbury, then offered for sale by one Strong, it being then well understood between the plaintiff and the defendant that, in making the purchase, the defendant was acting as the agent for the plaintiff; that the plaintiff instructed the defendant to pay no more than was absolutely necessary to obtain the title to the property, to which the defendant agreed; that the de-

fendant then purchased the property of Strong for $29,000, and afterward represented to the plaintiff that the price was $31,000, and that the plaintiff, not knowing that the defendant had paid but $29,000, paid the defendant the sum of $31,000; that these representations by the defendant were false and made with the intent to deceive the plaintiff and did deceive her, and that the resulting damage to her was $2,000.

The defendant asked for the correction of the finding in various particulars, and the refusal of that request is the basis of the first three reasons of appeal. The narrowed limits of our examination make most of these unimportant, for, if made, they would not affect the validity of the judgment rendered, and so do not require consideration by us. *Herzog* v. *Cooke,* 99 Conn. 366, 367, 121 Atl. 868; *Barber* v. *Manchester,* 72 Conn. 675, 680, 45 Atl. 1014; *Candee* v. *New York, N. H. & H. R. Co.,* 73 Conn. 667, 669, 49 Atl. 17; *Gilpatric* v. *National Surety Co.,* 95 Conn. 10, 18, 110 Atl. 545. The appeal having been perfected under General Statutes, § 5832, and all the evidence being before us, we have carefully examined the entire record. Our conclusion is that paragraph two of the defendant's proposed finding is supported by evidence which is in fact undisputed and should be allowed. *Burns* v. *Telegram Publishing Co.,* 89 Conn. 549, 94 Atl. 917. So far as we find, there is nothing to show whether the defendant asked for or received compensation for his services in the purchase of the property, and paragraphs fifty-one and fifty-two of the defendant's proposed finding cannot be allowed as requested in reasons two and three. We may add, that in our view of the case the fact is not of serious importance. This gives all the consideration necessary to the first three of the defendant's reasons of appeal.

The fourth reason relates to the exclusion of the record of conviction of the witness Kurtz in the United States District Court for violation of the National Prohibition Act, the charge being in two counts, one for possessing certain property designed for the manufacture of intoxicating liquor in violation of this Act, and the other for possessing such liquor for beverage purposes.

The penalty for these offenses is not specifically prescribed by the Act (41 U. S. Stat. at Large, p. 305), but falls within the provisions of § 29: "Any person who violates any of the provisions of this title for which offense a special penalty is not prescribed, shall be fined for a first offense not more than $500;" for a subsequent offense, a fine of "not less than $500 and be imprisoned not less than three months nor more than two years." Since nothing appears upon this record to indicate that the offense was other than a first offense, we must assume that it was the latter.

The penalty for a first conviction for such offenses cannot be imprisonment. *Torrey* v. *United States,* 278 Fed. 177. It can only be a fine of "not more than $500." We have heretofore construed General Statutes, § 5705, "no person shall be disqualified as a witness in any action by reason . . . of his conviction of crime; but such conviction may be shown for the purpose of affecting his credit." We held in *Card* v. *Foot,* 57 Conn. 427, 18 Atl. 713, that this statute referred to infamous crimes, and that the record of conviction of such crimes might be shown "for the purpose of affecting his [the witness'] credit." We held in the *Drazen* case, 95 Conn. 500, 111 Atl. 861, that crimes whose punishment must be imprisonment in the State prison are infamous crimes, within the meaning of this statute, and also those crimes which may be punished by such imprisonment when the nature of the crime in-

volved moral turpitude, and that "crimes whose penalty must be [imprisonment] in the county jail will be [held] to be infamous when the nature of the crime involves moral turpitude and the penalty may be six months or more." *Drazen* v. *New Haven Taxicab Co.,* 95 Conn. 500, 508, 111 Atl. 861. Since the penalty which could have been imposed for the offenses of which Kurtz was found guilty could not have been imprisonment in any event, they do not come within our classification of infamous crimes covered by the provisions of our statute above referred to.

The evidence was offered upon the theory that the crimes of which Kurtz was convicted involved moral turpitude. Generally speaking, and applicable to the case before us, moral turpitude involves an act of inherent baseness in the private, social, or public duties which one owes to his fellowmen or to society, or to his country, her institutions and her government. *In re Henry,* 15 Idaho, 755, 99 Pac. 1054.

No hard and fast definition of moral turpitude can be given. It must be left to the process of judicial inclusion and exclusion, as the cases are reached and as the standards of society change. *Drazen* v. *New Haven Taxicab Co., supra,* p. 505. Among the recent cases in other jurisdictions, we find these which hold that there was moral turpitude: An attorney who defrauded his partner; *In re Cruickshank,* 47 Cal. App. 496, 190 Pac. 1038; the violation of the law forbidding a public officer to retain any reward other than that allowed by law for doing anything appertaining to his duties as such; *State ex rel. Griffith* v. *Anderson,* 117 Kan. 117, 230 Pac. 315, 317; the making of a false charge against a judge, of a misuse of his judicial office and misconduct in office, which was unjustified, and without probable cause; *In re Graves,* 64 Cal. App. 176, 221 Pac. 411; the sale by a physician, in violation

of law, of morphine, for other than medicinal purposes, to an habitual user thereof; *White* v. *Board of Medical Examiners,* 70 Colo. 50, 197 Pac. 564; the engaging by an attorney in a conspiracy for the purpose of hindering his country while at war, from procuring, by recruiting or enlistment, the military force deemed essential to the carrying on of war, contrary to the statute. In this case the court held: "That such conduct on his part would involve moral obliquity and constitute a base offense against his fellowmen and his country entirely regardless of statute prohibiting it cannot, it seems to us, be seriously questioned;" *In re O'Connell,* 184 Cal. 584, 587, 194 Pac. 1010; and the making, by a citizen of the United States, at a time when our country is at war, knowingly and wilfully, of false statements with intent to interfere with the success of its military and naval forces and with intent to promote the success of its enemies, or attempts to cause disloyalty, insubordination, mutiny, and refusal of duties in its military and naval forces, or wilfully obstructs or attempts to obstruct its recruiting and enlistment service, is conduct involving moral turpitude. *In re Keel,* 32 Idaho, 737, 188 Pac. 40.

The Constitution of the United States is the supreme law of the land. Not alone jurists, but publicists the country over, are in agreement that, as interpreted by our Supreme Court, it has been a mightier influence in maintaining our government, and in helping it to meet the problems it has been confronted with, than any other single influence. Our Country and our Constitution are inseparable. The Constitution has held our past, it now holds our present, and if we keep to its defined course, it will sustain our future. The National Prohibition law and the State laws passed in aid of the enforcement of the Eighteenth Amendment, are vitally necessary to the life and strength of this Amendment.

Without them it must fail in its purpose. The violation of these laws is a violation of the Constitution of the United States. If one provision can be violated with impunity, another soon will be. If one who gives aid to the enemy of his country in time of war is guilty of moral turpitude, how may we distinguish the man who in time of peace, by his deliberate course, helps to destroy the Constitution? It is indeed true, that many do not see or feel that the violation of the liquor law is undermining the most vital of all our governmental institutions—the Constitution of the United States. Opinions may differ as to the wisdom of the law, but there can be no such difference as to the duty of the citizen. Courts will not look at violations of that law with easy disregard of the baseness of the act, the unchecked effect of which is fraught with so serious a public evil and is so destructive of the people's regard for the law of the land. Crimes of this character are not ordinary crimes; they are violations of those duties which every citizen owes to society of which he is a part, and the country of which he is a part. Citizens who disregard those high obligations and are convicted in the courts of their own country or state, are not on a par with loyal citizens. Their offenses involve moral turpitude, and if the other condition is present—the penalty of imprisonment, which may be six months or more—they are guilty of a crime which the law denominates as infamous, and the record of conviction becomes admissible to affect their credibility as witnesses in the courts, under the provisions of General Statutes, § 5705. The following are cases which support this view, in other jurisdictions: *State ex rel. Young* v. *Edmunson,* 103 Ore. 243, 204 Pac. 619; *Rudolph et al., Commissioners,* v. *United States ex rel. Rock,* 6 Fed. (2d) 487. A case in which the other view is taken is *Ex parte Marshall,* 207 Ala. 566, 93 So. 471. Counsel

for the appellee rely upon the fact that we cited in the *Drazen* case, among a number of other instances of crimes which, in other jurisdictions, had been held not to involve moral turpitude, the case of an offense against the liquor law which arose prior to the National Prohibition Act. This was done to present all views, and for the same reason we now cite *Ex parte Marshall, supra.* It did not mean that we adopted the ruling in that case, either as correct or as applicable to a case arising under the National Prohibition Act.

We hold, then, that violations of the Eighteenth Amendment necessarily involve moral turpitude. The ruling by which the conviction of Kurtz was excluded by the trial court was right. Though the offense involved moral turpitude, one of the two necessary elements of infamous crimes, the penalty prescribed, did not involve imprisonment for six months or more, so the second element was lacking.

The statute, General Statutes, § 5705, admits proof of convictions for infamous crimes, to affect the credit of a witness. Treason, felony and the *crimen falsi*, as at common law, including all crimes for which the punishment prescribed must be imprisonment in the State prison, are infamous crimes; and this term includes, in addition, all crimes or misdemeanors which in their nature involve moral turpitude and must be punished by imprisonment in jail for a term which may be six months or more.

The fifth reason of appeal relates to certain "conclusions" of the trial court, so-called, forty-one to forty-seven inclusive. Of these only forty-one and forty-seven are conclusions from subordinate facts. Paragraph forty-one of the finding, as a conclusion from the subordinate facts, presents a question which is clearly of controlling importance in this case, for if the defendant was not the agent of the plaintiff for

Kurtz *v.* Farrington.

the purchase of this property or did not occupy a fiduciary relation to her, then there was no legal duty on the part of the former to refrain from purchasing the property for himself or to disclose to the plaintiff that he had done so before selling it to her, and he was also legally justified in charging the plaintiff $2,000 more than he paid for the property. On the other hand, if the defendant was the agent of the plaintiff or occupied a fiduciary relation to her, he was as clearly not justified in the course he adopted in purchasing and reselling the property. Thus the key to the solution of this case is the validity of paragraph forty-one of the court's finding, and our answer to the question which confronts us must be found by an examination of the finding as finally corrected by us.

The sixth reason of appeal relates to paragraphs forty-two, forty-three, forty-four and forty-six of the finding, which the trial court held to be conclusions. In reality these were findings of fact. An examination of the entire record before us discloses a sharp conflict of testimony as to the points involved in these findings. As to each of these findings, it must be said that there is evidence from which the court could reasonably have reached the conclusion which it did, and they must therefore stand, for we cannot weigh the evidence and say that the conclusion of the trial court was wrong.

We proceed to examine the conclusions stated in paragraphs forty-one and forty-seven in the light of the finding as corrected. It appears that the defendant had long been in the real-estate business in Waterbury, and the plaintiff had purchased from him, or through his agency, several pieces of real estate in that city, and in all these instances he had received his compensation from and acted as the agent of the seller and not for the plaintiff. On October 12th, in response to an advertisement by W. S. Strong in a local newspaper,

the defendant telephoned to Mr. Strong for an appointment, and on the 13th began negotiations with him for the purchase of the property for himself. Also on the 13th, the plaintiff saw the advertisement in the newspaper, and on the 14th attempted to see and interview Mr. Strong with a view to a possible purchase of the property. She failed to find him and so went directly to the defendant's office to see the defendant, a real-estate agent. She there told the defendant of the property, showed him the advertisement, and explained to him her interest in the matter and her thought of possibly buying the property. Though the defendant had already opened negotiations with Strong for the purchase of the property for himself, he did not disclose that fact to the plaintiff, but told her he would find out about the property. On the following day, the 14th, he telephoned her that he had found out about it and asked her to come in and see him, which she did. He took her for an inspection of the property, showed her a map, and gave her more or less information about the property lines and the terms of purchase, saying to her that the lowest price at which it could be bought was $31,000. The plaintiff then decided she would buy the property, and so turned over $1,000 to the defendant on account of the purchase price. So far as the plaintiff was concerned it is clear that she depended entirely upon the defendant to this point, and, so far as appears, she had no information whatsoever which put her upon inquiry as to his real position in the matter. His service for her was such as would be expected of an agent who was accustomed to act in behalf of customers seeking his services. The plaintiff took no further active part in putting the transaction through. She employed no counsel or other assistance throughout, but the defendant took charge of the matter for her and saw to it that all the deeds were prepared at the

office of his own counsel, met her at the bank where the necessary cash was obtained by a mortgage of the property to the bank, and delivered to her the final papers. "The plaintiff acted throughout the transaction without legal advice and relied fully upon the defendant to attend to and protect her interests in the matter." Rec., p. 18, Par. 22. The finding shows that all this time, while her interests had thus been looked after by the defendant, she was unaware, and he concealed from her the fact that he had an interest personally in the transaction as a buyer and a seller of the property. He not only permitted but induced her to believe that he was acting for her and solely in her interest, and on the facts disclosed by the finding she was fully justified in so supposing.

One of the many comprehensive definitions of agency is that found in Mechem on Agency (1st Ed.) § 1: "A legal relation founded upon the express or implied contract of the parties, or created by law, by virtue of which one party—the agent—is employed and authorized to represent and act for the other—the principal— in business dealings with third persons." See also *Harkins* v. *Murphy & Bolanz,* 51 Tex. Civ. App. 568, 112 S. W. 136, 137; *Steele* v. *Lawyer,* 47 Wash. 266, 275, 91 Pac. 958. An agency is defined as "a contract, either express or implied, by which one of the parties confides to the other the management of some business, to be transacted in his name, or on his account, by which that other assumes to do the business, and to render an account of it." 2 Kent, Comm., p. 612.

While an agency is thus generally the result of contract, express or implied, it is not always necessary to find all the elements of a contract in order to establish the relation. Even where one undertakes to act for another without compensation, and the element of consideration necessary for a contract is lacking, if he

does in fact enter upon the undertaking, the relation of agency between him and the party for whom he is acting is created. 2 Corpus Juris, 419, and citations.

When the plaintiff visited the defendant on the 15th of October and requested him to undertake to get the property for her, and the defendant, by his concealment of his knowledge of the matter, led her to believe that he was free to act in her behalf, and did so by pretending to look up the matter for her, and telephoned her the following day that he had done so, she was justified in believing that he was in fact representing her, and his subsequent conduct down to the consummation of the sale, so far as this was disclosed to her by him, was properly a confirmation of that belief on her part, and she acted upon that belief throughout. Under these circumstances, a fiduciary relation was created which the law does not allow the defendant to violate to the damage of the plaintiff. It is not always necessary to enter into meticulous definitions of the relation, or seek to determine whether it arose by an express or implied contract between the parties, or whether the defendant should be treated as estopped by his conduct from denying that the relation existed. The relation need not arise from an express appointment and an acceptance, but is often established from the words and conduct of the parties and the circumstances of the particular case. *Martin* v. *Webb*, 110 U. S. 7, 3 Sup. Ct. 428; *Hill, Fontaine & Co.* v. *Helton*, 80 Ala. 528, 1 So. 340; *Trundy* v. *Farrar*, 32 Me. 225; *Lash* v. *Ames*, 171 Mass. 487, 50 N. E. 996; *Long* v. *Colburn*, 11 Mass. 97; *Keyes & Co.* v. *Union Pacific Tea Co.*, 81 Vt. 420, 427, 71 Atl. 201.

The defendant, in brief and argument, dwells upon the contention that the plaintiff "must have known" that the defendant "was not her hired agent," and argues from this that there could not have been an

agency by express or implied contract. There is, as we have seen, nothing to show whether she expected to pay the defendant for his services or not, but compensation is not a necessary element.

Neither can we concur in the claim of the defendant that the essential elements of an estoppel—many of which were presented in *Herzog* v. *Cooke,* 99 Conn. 366, 121 Atl. 868; *C. & C. Electric Motor Co.* v. *D. Frisbie & Co.,* 66 Conn. 67, 33 Atl. 604; *Goldberg* v. *Parker,* 87 Conn. 99, 87 Atl. 555; *Monterosso* v. *Kent,* 96 Conn. 346, 113 Atl. 922; *Lewis* v. *Lewis,* 76 Conn. 586, 57 Atl. 735, and other cases in this State cited by him—are wanting in this case. In fact, the statement the defendant quotes from the opinion in the *Frisbie* case applies with rather striking effect to the circumstances disclosed by the finding in this case (p. 96), viz.: "'When one person by anything which he does or says, or abstains from doing or saying, intentionally causes or permits another to believe a thing to be true, and to act upon such belief otherwise than but for that belief he would have acted, neither the person first mentioned nor his representative in interest is allowed, in any suit or proceeding between himself and such person or his representative in interest, to deny the truth of that thing.'"

Our conclusion is not only that there was, in this case, a fiduciary relation between the plaintiff and defendant, but that the facts show agency by contract. In any event, the defendant is now estopped by his conduct from denying the fiduciary relation.

It cannot seriously be disputed that the conduct of the defendant above referred to was not such as the law requires of an agent. It results that the conclusion of the trial court as stated in paragraph forty-seven, was sound and just, and the defendant became liable to the plaintiff for the $2,000 damages which

she suffered as a result of that conduct, with interest thereon as found by the trial court. *Twiss* v. *Herbst,* 95 Conn. 273, 111 Atl. 201; *Mucke* v. *Solomon,* 79 Conn. 297, 64 Atl. 738; *Schleifenbaum* v. *Rundbaken,* 81 Conn. 623, 71 Atl. 899; *Herzog* v. *Cooke,* 99 Conn. 366, 121 Atl. 868; *Burns* v. *Whitford,* 98 Conn. 715, 120 Atl. 565; 9 Corpus Juris, 536 *et seq.*

The sixth and last reason of appeal, with its subdivisions, is covered by the conclusion to which we have arrived, and further discussion is unnecessary

There is no error.

In this opinion the other judges concurred.