MEMORANDUM OF DECISION
This case presents a petition for the termination of the parental rights of Debra M. and Curtis M. who are the biological parents of the minor child Curtis M, Jr. (herein after called "C.J.") The minor child "C.J." is presently 24 months of age . He has lived for most of his young life with his maternal aunt who wishes to adopt him if the parents rights are terminated. The biological mother of "C.J." does not object to the termination of her rights and joins in the request to allow the child to be adopted.
The court finds that the mother has appeared and has a court appointed attorney. The court finds that the father has been served, had counsel appointed and appeared for the contested hearing. The court has jurisdiction in this matter; there is no pending action affecting custody of the child in any other court and reasonable efforts have been made to reunify this family.
The court having read the verified petitions, the social studies and the various documents entered into evidence, and having heard the testimony of various case workers and evaluators, makes the following findings by clear and convincing CT Page 7420 evidence.
The mother does not contest the termination of her rights. The testimony of the social workers and the social study (Petitioner's Exhibit 3) clearly support a finding of failure to rehabilitate as to Debra M[2].
The father, Curtis M., attended the hearing with counsel, offered evidence, contested the petitioner's case and testified himself in opposition to the termination of his parental rights.
The court finds the following relevant facts. The child was born on July 26, 1995. The parents were unmarried but lived with each other in a completely dysfunctional setting which required immediate intervention by the Department of Children and Families ("DCF"). Mother had used cocaine and alcohol right up to the eve of the child's birth. The child left the hospital into a foster home. The child was returned to the parents on August 23, 1995, was placed under the Protective Supervision of DCF and was permanently removed on October 11, 1995, for mother's alcohol abuse. The child was in the care of the parents for little more than six weeks. The child was placed in a foster home and did not do well. On November 2, 1995, the child was placed in a relative placement with the maternal aunt where the child remains today. The child, by all accounts, has achieved normal developmental milestones, is happy, well-adjusted, bonded and views his foster parents as his natural parents.
The father, Curtis M., is presently thirty years of age. The social study has limited information regarding his background since he failed to cooperate with the social worker. Similarly, father failed to attend a court ordered psychological evaluation indicating that he had a problem with transportation. The evaluation had been especially arranged to accommodate his schedule. He did not elect to participate in a substance abuse evaluation.
Father's criminal history is very impressive. (See petitioner's exhibit 6.) Prior to the birth of this child, father had been convicted of Sexual Assault in violation of General Statute § 53a-71 and Risk of Injury to a child in violation of General Statute § 53a-21. The convictions occurred on Sept 22, 1992, and had involved the sexual assault of a 16 year old girl. He was sentenced to five years in jail, execution suspended after two years with three years of probation for the CT Page 7421 sexual assault charge, and an identical concurrent sentence on the risk of injury charge. As a special condition of probation, he was to attend sexual offender treatment programs. He was on probation when, on August 23, 1995, at the Superior Court for Juvenile Matters in Hartford, he entered into court approved expectations which required him to avoid further involvement with the criminal justice system. On September 3, 1996, Curtis M. was convicted of a violation of probation on the sexual assault charge and sentenced to three years in the care and custody of the commissioner of corrections. He is presently incarcerated. He testified during this trial that his release date is expected to be in September of 1998, and he believed he would be able to parent approximately six to eight months after his release.
The court notes that the father has been convicted of a crime involving moral turpitude, the sexual assault of a 16 year old minor child.
 Moral turpitude, we have observed, is a vague and imprecise term to which no hard and fast definition can be given. Kurtz v. Farrington, 104 Conn. 257, 262, 132 A. 540; Drazen v. New Haven Taxicab Co., 95 Conn. 500, 506, 111 A. 861. A general definition applicable to the case before us is that moral turpitude involves an act of inherent baseness, vileness or depravity in the private and social duties which man does to his fellow man or to society in general, contrary to the accepted rule of right and duty between man and law. Kurtz v. Farrington, supra; Moriarty v. Lippe, 162 Conn. 371, 383 (1972) 294 A.2d 326
In a neglect proceeding, the court approved expectations are, in some sense, guidelines for parents to assist in their rehabilitation. Similarly, conditions of probation in criminal cases are designed for the rehabilitation of the offender, as well as, the protection of society. State vs. DeMasi34 Conn. App. 46, 55 640 A.2d 138, cert. denied, 230 Conn. 906,644 A.2d 920 (1994) State vs Welch, 40 Conn. App. 395, 402, 671 A.2d 379
(1996).
Here we have a respondent convicted of a crime involving moral turpitude, who is given the opportunity to attend sexual offender treatment to rehabilitate himself and fails to do so, resulting in a court finding that he violated the rehabilitative CT Page 7422 terms of his probation. This court finds that such an event constitutes a violation of the expectations, and that, taken together with the respondent's failure to cooperate otherwise with DCF, supports a finding by this court that the father has failed to rehabilitate himself within the contemplation of General Statutes § 17a-112(c)(3)(B).
ADJUDICATION
With respect to the statutory grounds for termination of parental rights, the court finds, by clear and convincing evidence, that this child was previously found to be have been uncared for on August 23, 1995. The court further finds the mother and father have failed to achieve such a degree of personal rehabilitation as would encourage the belief that, within a reasonable time, considering the age and needs of the child, that they could assume a responsible position in the life of this child. The court finds that this ground has existed for more than one year.
With respect to the mandatory factual findings required by General Statutes § 17a-112 (e):
1) The timeliness, nature and extent of services offered. The court finds that psychological and psychiatric services were offered, visitation was offered and foster care was provided by DCF.
2) Whether DCF has made reasonable efforts to reunite the family pursuant to the Adoption Assistance and Child Welfare Act of 1980. The parents had more than enough time to demonstrate their desire and concern for reunification and to achieve rehabilitation. The father of the child was offered services he did not choose to accept. He violated his probation resulting in his subsequent incarceration and accordingly was not available for the delivery of services.
3) The terms of applicable orders entered into and agreed to by any individual or agency and the extent of fulfillment of those obligations, etc. The court finds that the mother did not fulfill or comply with the expectations as set forth in the social study. The father's failure to avoid further criminal involvement constituted a violation of his expectations.
4) The feelings and emotional ties of the child with respect CT Page 7423 to the parents and foster parents, etc. The court finds that the child is bonded to his present foster family, considers himself part of the family and that no emotional bonds will be broken by termination of the parents' rights.
5) As to the age of the child. The child will be two years of age by the end of the month. Our Supreme Court has long recognized the deleterious effect of prolonged temporary care of abused and neglected children. In re Juvenile Appeal (84-CD),189 Conn. 276 (1983). The Appellate Court has also correctly noted, "[b]ecause of the psychological effects of prolonged termination proceedings on young children, time is of the essence. . ." In reAlexander V., 25 Conn. App. 741, 748, 596 A.2d 930 (1992); see generally, JOSEPH GOLDSTEIN, ET AL., BEYOND THE BEST INTERESTS OF THE CHILD 99 (1979).
6) The efforts the parent have made to adjust their circumstances or conditions. The court finds that the mother has been unsuccessful in making any meaningful attempt to adjust her circumstances, conduct or condition to facilitate reunification. The father's unwillingness to participate in substance abuse evaluation and psychological evaluation, his violation of probation and his lack of meaningful determination to deal with his personal issues indicates an unwillingness to adjust his circumstances appropriately.
7) The court finds that there has been nothing to prevent the parents from maintaining a meaningful relationship with the child. There was no unreasonable conduct noted by DCF. The foster mother provided basically an open door policy on visitation.
DISPOSITION
Based upon the foregoing findings, the court determines that it is in the child's best interest for a termination of parental rights to enter with respect to the mother Debra M. and the male biological parent Curtis M. and, accordingly, a termination of their parental rights is ordered. It is further ordered that the Commissioner of DCF is appointed statutory parent for this child for the purpose of securing an adoptive family. If the foster parents are willing to adopt, it is the court's direction that they receive first consideration. The commissioner shall file with this court, no later than 90 days following the date of judgment, a written report of efforts to effect such permanent placement and file further reports as are required by State and CT Page 7424 federal law.
Francis J. Foley, Presiding Judge Child Protection Session